No. 20-16834

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

FRANCES MICHENER,

Plaintiff-Appellant,

v.

ANDREW M. SAUL,
Commissioner of Social Security;
SOCIAL SECURITY ADMINISTRATION,

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of California

## BRIEF FOR APPELLEES

*Of Counsel:*

ROYCE MIN
  *General Counsel*

STACEY W. HARRIS
  *Attorney, Office of Program Law*
  *Office of the General Counsel*
  *Social Security Administration*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

STEPHANIE HINDS
  *Acting United States Attorney*

SHARON SWINGLE
SUSHMA SONI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7218*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4331*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION ..................................................................2

STATEMENT OF THE ISSUES .........................................................................3

PERTINENT STATUTES AND REGULATIONS .........................................3

STATEMENT OF THE CASE ...........................................................................3

A.    Statutory And Regulatory Background ...................................................3

    1.    The Social Security Act And The Windfall Elimination
        Provision ..........................................................................................3

    2.    Bilateral Coordination Between U.S. And Foreign Social
        Security Systems ..............................................................................7

B.    Factual Background And Prior Proceedings ...........................................10

SUMMARY OF ARGUMENT ..........................................................................16

STANDARD OF REVIEW .................................................................................18

ARGUMENT .......................................................................................................18

I.    The Windfall Elimination Provision Applied To The Social Security
    Benefits Of Plaintiff And Her Late Husband Because He Received
    Payments From The Canada Pension Plan Based On Work That
    Was Not Subject To U.S. Social Security Taxes .....................................19

    A.    The Plain Language Of The Statute Supports SSA's
        Interpretation Of The Windfall Elimination Provision ...........................20

    B.    The Legislative History Confirms The Correctness of SSA's
        Interpretation ..................................................................................32

    C.    SSA's Interpretation Of The Windfall Elimination Provision
        Is A Reasonable And Longstanding Exercise Of Its Authority
        To Interpret The Statute It Administers .....................................35

        1.      Congress Delegated Broad Authority To SSA To
                Interpret The Social Security Act ....................................................36

        2.      The Government's Interpretation Of The Statute And
                The Totalization Agreement Are Persuasive And
                Entitled To Deference.......................................................................37

II.    Implementing Regulation 20 C.F.R. 404.213 Does Not Exempt
       Canada Pension Plan Benefits From Application Of The Windfall
       Elimination Provision ...........................................................................39

       A.      The Implementing Regulation Is Consistent With The Text
               Of The Windfall Elimination Provision.......................................40

       B.      The *Rabanal* Decision Is Factually Distinguishable And
               Legally Incorrect ............................................................................41

       C.      Canada Pension Plan Benefits Are Based On Earnings, Not
               Residence Or Citizenship ..............................................................42

CONCLUSION ................................................................................................45

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**

*Adams v. Halter,*
  11 F. App'x 748 (9th Cir. 2001) ................................................................ 23, 38

*Astrue v. Capato ex rel. B.N.C.,*
  566 U.S. 541 (2012) .................................................................................37

*Auer v. Robbins,*
  519 U.S. 452 (1997) .................................................................................41

*Babcock v. Commissioner of Soc. Sec.,*
  959 F.3d 210 (6th Cir. 2020) ..................................................................22

*Barnhart v. Walton,*
  535 U.S. 212 (2002) ............................................................................ 36, 37

*Beeler v. Berryhill,*
  381 F. Supp. 3d 991 (S.D. Ind. 2019)), *aff'd,*
  977 F.3d 577 (7th Cir. 2020) ..........................................................21, 26, 29

*Beeler v. Saul,*
  977 F.3d 577 (7th Cir. 2020) .................................... 2, 5, 8, 9, 18, 20, 22, 24, 25, 26, 27,
                                                       28, 29, 30, 31, 35, 39, 40, 41, 42, 43

*Better Business Bureau of Washington v. United States,*
  326 U.S. 279 (1945) .................................................................................21

*Chemical Mfrs. Ass'n v. Natural Res. Def. Council,*
  470 U.S. 116 (1985) ............................................................................ 35, 37

*Chevron U.S.A., Inc. v. Natural Res. Def. Council,*
  467 U.S. 837 (1984) .................................................................................37

*Chickasaw Nation v. United States,*
  534 U.S. 84 (2001) .................................................................................25

*City of Chicago v. Fulton,*
  141 S. Ct. 585 (2021) .............................................................................30

iii

*Corbett v. Commissioner of Soc. Sec.*,
    523 F. App'x 892 (3d Cir. 2013) ........................................................21

*Das v. Department of Health & Human Servs.*,
    17 F.3d 1250 (9th Cir. 1994) ...........................................................21

*Epic Sys. Corp. v Lewis*,
    138 S. Ct. 1612 (2018) ....................................................................25

*FDA v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ........................................................................32

*Flemming v. Nestor*,
    363 U.S. 603 (1960) ........................................................................21

*Hawrelak v. Colvin*,
    667 F. App'x 161 (7th Cir. 2016) ....................................................38

*Hunsaker v. United States*,
    902 F.3d 963 (9th Cir. 2018) ...........................................................20

*Kamyk v. Colvin*,
    No. 15 C 4229, 2016 WL 4798955 (N.D. Ill. Sept. 14, 2016),
    *aff'd*, 695 F. App'x 947 (7th Cir. 2017) ..........................................29

*Kientz v. Commissioner, SSA*,
    954 F.3d 1277 (10th Cir. 2020) .......................................................22

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019) ....................................................................41

*Larson v. Saul*,
    967 F.3d 914 (9th Cir. 2020) ........................................ 18, 22, 32, 36

*Linza v. Saul*, _ F.3d _,
    No. 19-2766, 2021 WL 852060 (2d Cir. 2021) ...............................22

*Martin v. Social Sec. Admin., Comm'r*,
    903 F.3d 1154 (11th Cir. 2018) .......................................................22

*Newton v. Commissioner Soc. Sec.*,
   983 F.3d 643 (3d Cir. 2020) ........................................................22

*Newton v. Shalala*,
   874 F. Supp. 296 (D. Or. 1994), *aff'd*,
   70 F.3d 1114 (9th Cir. 1995) ..........................................22, 29, 38

*Northwest Forest Res. Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996) ........................................................35

*O'Grady v. Massanari*,
   8 F. App'x 735 (9th Cir. 2001) ..............................................23, 38

*Petersen v. Astrue*,
   633 F.3d 633 (8th Cir. 2011) ......................................................22

*Rabanal v. Colvin*,
   987 F. Supp. 2d 1106 (D. Colo. 2013) .....................................41, 42

*Republic of Sudan v. Harrison*,
   139 S. Ct. 1048 (2019) ...............................................................39

*Robinson v. Shell Oil Co.*,
   519 U.S. 337 (1997) ...................................................................20

*Rudykoff v. Apfel*,
   193 F.3d 579 (2d Cir. 1999) (per curiam) ...................................22

*Schweiker v. Gray Panthers*,
   453 U.S. 34 (1981) .....................................................................36

*Stroup v. Barnhart*,
   327 F.3d 1258 (11th Cir. 2003) ...................................................22

*U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*,
   140 S. Ct. 1837 (2020) ...............................................................24

*Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*,
   537 U.S. 371 (2003) ...................................................................38

**Statutes:**

Social Security Amendments of 1977,
    Pub. L. No. 95-216, § 317, 91 Stat. 1509, 1538-40
    (now codified at, *inter alia*, 42 U.S.C. 433) ................................................8

Social Security Amendments of 1983,
    Pub. L. No. 98-21, § 113, 97 Stat. 65:
        § 113, 97 Stat. at 76................................................................................5
        § 322, 97 Stat. at 120-21 (now codified at 42 U.S.C. 410(a)(C)) ......................9

Social Security Independence and Program Improvements Act of 1994,
    Pub. L. No. 103-296, § 307, 108 Stat. 1464, 1522
    (now codified at 42 U.S.C. 415(a)(7)(A)(III) and 415(a)(7)(E)) ..............10

26 U.S.C. 1402(b) ..............................................................................................9

26 U.S.C. 3101(a) ......................................................................................... 4, 21

26 U.S.C. 3121(a) ............................................................................................21

26 U.S.C. 3121(b) .................................................................................9, 21, 25

28 U.S.C. 1291 ..................................................................................................3

28 U.S.C. 1361 ..................................................................................................2

28 U.S.C. 1391(e) ..............................................................................................2

42 U.S.C. 402(a)(3) ..................................................................................... 11, 18

42 U.S.C. 402(b)(2) ..........................................................................................11

42 U.S.C. 402(e) ..............................................................................................14

42 U.S.C. 405(a) ..............................................................................................36

42 U.S.C. 405(g) .....................................................................................2, 12, 20

42 U.S.C. 409 ............................................................................................. 4, 21

42 U.S.C. 410 ................................................................................. 5, 14, 20, 33

42 U.S.C. 410(a) ............................................................................. 4, 9, 20-21

42 U.S.C. 410(a)(A)-(B) (1983) ...................................................................6

42 U.S.C. 410(a)(C) ......................................................... 7, 23, 26, 28, 33

42 U.S.C. 413(a)(2)(A) ..............................................................................21

42 U.S.C. 414(a)(2) .....................................................................................4

42 U.S.C. 415(a)(1) .....................................................................................4

42 U.S.C. 415(a)(7) ...................................................................................11

42 U.S.C. 415(a)(7)(A) .............................................3, 5, 13, 20, 23, 24, 33, 41

42 U.S.C. 415(a)(7)(A)(II) .........................................................3, 5, 6, 10

42 U.S.C. 415(a)(7)(B) ................................................................................6

42 U.S.C. 415(a)(7)(D) ........................................................................ 6, 28

42 U.S.C. 415(b) ..........................................................................................4

42 U.S.C. 415(d)(3) ............................................................................. 5, 20

42 U.S.C. 415(d)(7) ...................................................................................13

42 U.S.C. 415(f)(9)(B)(ii) ..........................................................................14

42 U.S.C. 415(i) ...........................................................................................4

42 U.S.C. 423(a)(1) .............................................................................11, 18

42 U.S.C. 433 ...................................................................... 6, 8, 9, 10, 39

42 U.S.C. 433(c)(1)(A) ................................................................................8

42 U.S.C. 433(c)(1)(B) ........................................................................ 9, 15

42 U.S.C. 433(c)(1)(B)(i) ..................................................................... 13, 30

42 U.S.C. 433(c)(1)(C) ...........................................................................9

42 U.S.C. 433(d) ..................................................................................36

42 U.S.C. 1383(c)(3) ...........................................................................2

**Regulations**:

20 C.F.R. 404.110 ................................................................................4

20 C.F.R. 404.201 ................................................................................4

20 C.F.R. 404.210-.211 .......................................................................4

20 C.F.R. 404.212 ................................................................................4

20 C.F.R. 404.213 ......................................................... 1, 3, 13, 37, 39

20 C.F.R. 404.213(a) ...........................................................................5

20 C.F.R. 404.213(a)(3) ........................................ 7, 40, 41-42, 42, 43

20 C.F.R. 404.213(b)-(d) .....................................................................6

20 C.F.R. 404.213(c)-(d) ......................................................................6

20 C.F.R. 404.213(e)(6) ......................................................................14

20 C.F.R. 404.310(c) ..........................................................................11

20 C.F.R. 404.316(b)(2) ......................................................................11

20 C.F.R. 404.981 ..............................................................................12

20 C.F.R. 404.1001(a) ..........................................................................4

20 C.F.R. 404.1001(c) ..........................................................................4

20 C.F.R. 404.1001(d) ..........................................................................4

**Legislative Materials:**

H.R. Rep. No. 95-702, pt. 1 (1977) ................................................................8

H.R. Rep. No. 95-837 (1977) (Conf. Rep.) ....................................................8

H.R. Rep. No. 98-25, pt. 1 (1983) ..................................................4, 5, 9, 33

H.R. Rep. No. 98-47 (1983) (Conf. Rep.) ...............................5, 9, 33, 35

H.R. Rep. No. 103-506 (1994) ..................................................................10, 34

H.R. Rep. No. 103-670 (1994) (Conf. Rep.) ..........................................4, 34, 35

S. Rep. No. 98-23 (1983) ...............................................................................33

**Other Authorities:**

52 Fed. Reg. 47,914 (Dec. 17, 1987) ..........................................................7

60 Fed. Reg. 56,511 (Nov. 9, 1995) ..........................................................10

Gov't of Canada:
    *Old Age Security–Overview* (last modified Dec. 31, 2020),
    https://www.canada.ca/en/services/benefits/publicpensions/cpp/old
    -age/security.html ..............................................................................43

    *Social Insurance Number—Eligibility* (last modified Apr. 9, 2020),
    https://www.canada.ca/en/employment-social-development/
    services/sin/eligibility.html ..............................................................43

SSA, *Program Operations Manual System (POMS)*:
    GN 00307.290 (June 4, 2015), https://go.usa.gov/xdTqY ............7, 38, 44
    GN 01701.320 (Jan. 9, 2009), https://go.usa.gov/xdTqX ..........................41

SSA, *Windfall Elimination Provision* (Jan. 2021), https://go.usa.gov/xEtvD ....................6

INTRODUCTION

This appeal asks whether the Social Security Act's Windfall Elimination

Provision applies to the Social Security benefits of plaintiff and her late husband, Dr.

Steven Rosell, due to Rosell's receipt of Canadian pension benefits based on work

that was not subject to U.S. Social Security taxes.

Plaintiff and her late husband brought this putative class action lawsuit

challenging the Social Security Administration's (SSA's) reduction of the husband's

U.S. Social Security disability benefits and plaintiff's related spousal benefits pursuant

to the Windfall Elimination Provision, which adjusts benefits for individuals who

receive *both* Social Security benefits *and* a monthly periodic payment from work that

was not covered employment subject to Social Security taxes. The district court

correctly upheld the reduction on the ground that the Canadian employment of

plaintiff's late husband was not covered employment (or equivalent to covered

employment) for purposes of the Social Security Act. The district court also correctly

held that plaintiff's husband's Canadian pension benefits were not exempted from the

Windfall Elimination Provision under 20 C.F.R. 404.213 because they were not based

on citizenship or residence, but instead on a qualifying period of work in Canada.

Plaintiff's argument that the windfall provision does not apply is inconsistent

with the text of that provision as well as other provisions of the Social Security Act.

Plaintiff's reading also cannot be squared with the Social Security Act's distinction

between covered employment, which is subject to the U.S. Social Security taxes and

used to calculate the worker's eligibility for and amount of Social Security benefits, and noncovered employment, which is exempt from U.S. Social Security taxes and thus is not included in the calculation of Social Security benefits—a distinction that is integral to the interpretation of the windfall provision.

The Seventh Circuit recently decided the precise issues presented here in the government's favor in *Beeler v. Saul*, 977 F.3d 577 (7th Cir. 2020). Like the plaintiff in this case, the *Beeler* plaintiffs argued that (1) their work in Canada for non-American employers, which was not subject to U.S. Social Security taxes, constituted covered employment for purposes of the Social Security Act and was therefore exempt from the windfall provision, and (2) the agency's implementing regulation exempts Canada Pension Plan benefits from the windfall provision because those benefits are allegedly based on citizenship or residence. The Seventh Circuit rejected both arguments, and denied rehearing en banc without a single dissenting vote.

Plaintiff urges this Court to reverse the district court's decision in this case and go into conflict with the Seventh Circuit's thorough and well-reasoned decision. Plaintiff offers no persuasive reason to do so. This Court should affirm.

## STATEMENT OF JURISDICTION

Plaintiff challenges the Social Security Administration's final decision regarding her late husband's disability benefits and her related spousal benefits. Plaintiff invoked the district court's jurisdiction under 42 U.S.C. 405(g) and 1383(c)(3), and 28 U.S.C. 1361 and 1391(e). ER-201 (Compl.). The district court entered final judgment

on July 24, 2020, denying plaintiff's motion for summary judgment, granting the government's cross-motion for summary judgment, and denying plaintiff's motion for class certification as moot. ER-4 (Judgment). On September 18, 2020, plaintiff filed a timely notice of appeal. ER-229 (Notice of Appeal). This Court has jurisdiction under 28 U.S.C. 1291.

## STATEMENT OF THE ISSUES

(1) Whether the Social Security Act's Windfall Elimination Provision, 42 U.S.C. 415(a)(7)(A), applies to reduce plaintiff's late husband's disability benefits and her related spousal benefits due to his receipt of Canadian pension benefits for work in Canada that was not subject to U.S. Social Security taxes; and

(2) Whether the agency correctly held that implementing regulation 20 C.F.R. 404.213 does not exempt Canadian pension benefits from the Windfall Elimination Provision because those foreign payments are not based on citizenship or residence.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

A.      Statutory And Regulatory Background

1.      The Social Security Act And The Windfall Elimination Provision

a. The Social Security Act authorizes the payment of retirement or disability benefits based on a worker's average lifetime earnings from "covered * * *

3

employment," that is, work that was subject to Federal old-age, survivors, and disability insurance taxes (Social Security taxes). *See, e.g.*, 20 C.F.R. 404.1001(a).[1] In order to be fully insured under the Act and qualify for benefits, individuals must have forty quarters of covered employment in which they meet the minimum earnings requirement. *See* 42 U.S.C. 414(a)(2); 20 C.F.R. 404.110.

Congress weighted the benefit formula to favor career low-wage earners over individuals with relatively high average lifetime earnings, who Congress considered to be less in need of financial support. *See, e.g.*, H.R. Rep. No. 98-25, pt. 1, at 22 (1983); H.R. Rep. No. 103-670, at 125 (1994) (Conf. Rep.).[2] However, "[i]ndividuals who have short periods of covered work also receive this advantage because their few years of earnings are averaged over a 35-year period to determine their average monthly covered earnings." ER-9 (Order). A worker who receives *both* a pension from noncovered employment (such as jobs in foreign countries for foreign employers), *and* a heavily weighted Social Security retirement or disability benefit based on a short

---

[1] *See* 42 U.S.C. 415(b), (e); *see also* 42 U.S.C. 409, 410(a) (defining "wages" and "employment"); 26 U.S.C. 3101(a) (describing Social Security taxes imposed on workers); 20 C.F.R. 404.210-.211, 404.1001(a), (c), (d).

[2] Under the statutory formula, an individual generally receives 90% of his average indexed monthly earnings, up to a specified amount; if his earnings exceed that amount, he also receives 32% of the remainder of his monthly earnings, up to another specified amount; if his earnings exceed the sum of these two amounts, he also receives 15% of the remainder of his monthly earnings. *See* 42 U.S.C. 415(a)(1); 20 C.F.R. 404.212. The resulting amount is then subject to various adjustments not relevant here. *See, e.g.*, 42 U.S.C. 415(i) (describing cost-of-living adjustments); 20 C.F.R. 404.201.

period of covered earnings, would "receive a total retirement income greater than a worker with similar earnings on which Social Security taxes were paid:  a so-called 'windfall.'"  *Beeler v. Saul*, 977 F.3d 577, 582 (7th Cir. 2020); *see also* H.R. Rep. No. 98-25, pt. 1, at 22; H.R. Rep. No. 98-47, at 120-21 (1983) (Conf. Rep.).  This windfall is even greater for a worker who receives *three* kinds of benefits based on his career earnings:  a foreign social security benefit based on his noncovered employment, a private pension from the same noncovered employment, and a Social Security benefit based on a period of covered employment.

b.  To correct this unintended advantage, Congress enacted the Windfall Elimination Provision, which modifies the standard Social Security benefit formula for any individual who is also receiving a "monthly periodic payment * * * which is based in whole or in part upon his or her earnings for service which did not constitute 'employment' as defined in [42 U.S.C.] 410 * * * (hereafter in this paragraph and in [42 U.S.C. 415(d)(3)] referred to as 'noncovered service')." 42 U.S.C. 415(a)(7)(A); *see generally* Social Security Amendments of 1983, Pub. L. No. 98-21, § 113, 97 Stat. 65, 76; 20 C.F.R. 404.213(a).  "In other words, the [Windfall Elimination Provision] applies where the recipient provided services which are not 'employment' under section 410."  ER-9 (Order).

Under this modified formula, individuals generally receive a smaller percentage of their average indexed monthly earnings than they would receive under the standard formula.  To moderate the impact of the provision on individuals with small pensions

5

from noncovered employment, Congress specified that Social Security benefits cannot be reduced by more than half of the monthly payment that the individuals receive based on their noncovered work. *See* 42 U.S.C. 415(a)(7)(B), (D); 20 C.F.R. 404.213(b)-(d); *see generally* SSA, *Windfall Elimination Provision* (Jan. 2021), https://go.usa.gov/xEtvD.[3] The modified formula does not apply to, among other things, monthly payments to individuals with at least thirty years of substantial earnings in covered employment. *See* 42 U.S.C. 415(a)(7)(D). The Windfall Elimination Provision also excludes payments by the social security system of a foreign country based on an international agreement between the U.S. and the foreign country under 42 U.S.C. 433. *See* 42 U.S.C. 415(a)(7)(A)(II); *see also infra* p. 10.

When Congress enacted the Windfall Elimination Provision in 1983, the Social Security Act defined "employment," for purposes of determining what earnings were subject to Social Security taxes, as "any service, of whatever nature, performed after 1950" within the United States or on an American vessel or aircraft (pursuant to a service contract), or outside the United States by an American citizen or resident for American employers and certain foreign affiliates. 42 U.S.C. 410(a)(A)-(B) (1983). As explained *infra* p. 9, Congress later amended this definition to include "service, regardless of where or by whom performed, which is designated as employment or

---

[3] The modified formula differs from the standard formula in only one respect: The 90% figure in the standard formula, *see supra* note 2, is replaced with a different specified percentage, which varies between 40% and 85%, depending on several factors not relevant here. *See* 42 U.S.C. 415(a)(7)(B), (D); 20 C.F.R. 404.213(c)-(d).

recognized as equivalent to employment under an agreement entered into under

section 433 of this title," 42 U.S.C. 410(a)(C), in order to authorize Social Security

taxation of earnings for certain jobs in foreign countries.

The Windfall Elimination Provision's implementing regulation explains that

> Noncovered employment includes employment outside the United States which is not covered under the United States Social Security system. Pensions from noncovered employment outside the United States include both pensions from social insurance systems that base benefits on earnings but not on residence or citizenship, and those from private employers.

20 C.F.R. 404.213(a)(3); *see also* 52 Fed. Reg. 47,914, 47,915-16 (Dec. 17, 1987) (final

rules); SSA, *Program Operations Manual System (POMS)*, GN 00307.290 (June 4, 2015)

https://go.usa.gov/xdTqY.

2.  Bilateral Coordination Between U.S. And Foreign Social Security Systems

a. Workers who split their careers between covered employment in the United

States, and noncovered employment outside the United States, present challenges for

the U.S. Social Security system, including (1) dual taxation, *i.e.*, when a U.S. citizen

works in another country and is required to pay social security taxes to both countries

on the same earnings; and (2) incomplete coverage or loss of continuity of coverage,

*i.e.*, when an individual who worked in the U.S. and another country, and contributed

to both social security systems, fails to qualify for a benefit in one or either system. H.R. Rep. No. 95-702, pt. 1, at 39 (1977);[4] *Beeler*, 977 F.3d at 582.

To address these problems, Congress amended the Act and the Internal Revenue Code to authorize the President to enter into totalization agreements to coordinate benefits between the U.S. Social Security system and a similar system in a foreign country. Social Security Amendments of 1977, Pub. L. No. 95-216, § 317, 91 Stat. 1509, 1538-40 (now codified at, *inter alia*, 42 U.S.C. 433); *see generally* H.R. Rep. No. 95-837, at 70-71 (1977) (Conf. Rep.).

Section 433(a) of Title 42 authorizes the President to enter into a totalization agreement with a foreign country "for the purposes of establishing entitlement to and the amount of old-age, survivors, disability, or derivative benefits based on a combination of an individual's periods of coverage under [U.S. Social Security law] and the social security system of such foreign country." All totalization agreements entered into under 42 U.S.C. 433 must contain certain mandatory terms, including requirements that (1) the U.S. Social Security system may take a worker's coverage in the foreign country into account only if the worker has at least six quarters of coverage under U.S. law, 42 U.S.C. 433(c)(1)(A); (2) employment shall result in a period of coverage under either the U.S. Social Security system or the foreign

---

[4] *See also id.* ("Not only are the tax payments to foreign systems generally higher than in the United States but frequently American workers get little if any[] return for the taxes they and their employers pay to the foreign systems because social security eligibility requirements are usually stricter under foreign systems.").

country's system, "but not under both," 42 U.S.C. 433(c)(1)(B); and (3) a worker whose periods of coverage are combined (or "totalized") to qualify for coverage under the U.S. Social Security system will receive a pro-rated Social Security benefit amount based on the proportion of his U.S. periods of coverage, 42 U.S.C. 433(c)(1)(C). "The United States and Canada have been parties to a totalization agreement since 1984." *Beeler*, 977 F.3d at 583.

b. Congress soon realized that, "through an inadvertent drafting error," it could not impose Social Security taxes on earnings that the United States and a foreign country had agreed, pursuant to a totalization agreement, should be subject to taxation only under the U.S. Social Security system, because the Social Security Act's definition of "employment" did not cover those circumstances. H.R. Rep. No. 98-47, at 150; H.R. Rep. No. 98-25, pt. 1, at 75, 96-97. To fix this error, Congress amended the definition of "employment" in 42 U.S.C. 410(a) to include "service, regardless of where or by whom performed, which is designated as employment or recognized as equivalent to employment under an agreement entered into under" 42 U.S.C. 433. *See* Pub. L. No. 98-21, § 322, 97 Stat. at 120-21 (now codified at 42 U.S.C. 410(a)(C)).[5]

Congress enacted this technical fix as part of the same legislation enacting the Windfall Elimination Provision. A congressional report later noted that by law, the Windfall Elimination Provision applied to some totalized U.S. Social Security benefits,

---

[5] Congress also amended corresponding sections of the Internal Revenue Code. *See, e.g.*, 26 U.S.C. 3121(b), 1402(b).

even though the process for prorating the worker's benefit "largely removed" the weighting of the Social Security benefit formula that the Windfall Elimination Provision was intended to address. H.R. Rep. No. 103-506, at 66 (1994). The report stated that the Windfall Elimination Provision likewise applied based on a worker's receipt of a totalized foreign benefit, which was "inappropriate" because "a foreign pension that is based in part on U.S.-covered work should not be considered a pension based on non-covered employment for purposes of triggering application of the [Windfall Elimination Provision]." *Id.* at 67. Congress corrected both problems in the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, § 307, 108 Stat. 1464, 1522 (now codified at 42 U.S.C. 415(a)(7)(A)(III) and 415(a)(7)(E)). The Windfall Elimination Provision now contains an exception for a "payment by a social security system of a foreign country based on an agreement concluded between the United States and such foreign country" pursuant to 42 U.S.C. 433. 42 U.S.C. 415(a)(7)(A)(II); *see generally* 60 Fed. Reg. 56,511, 56,512 (Nov. 9, 1995) (final rules).

B.     Factual Background And Prior Proceedings

1. Plaintiff Frances Michener is a dual citizen of Canada and the United States, as was her late husband, Dr. Steven Rosell. ER-200-01 (Compl.). Between 1976 and 1990, before Rosell acquired U.S. citizenship, he worked in Canada and contributed to the Canada Pension Plan through payroll deductions from his earnings. ER-200 (Compl.); ER-184 (ALJ Decision). Based on his Canadian earnings, Rosell qualified

10

for and began receiving Canada Pension Plan benefits in 2013. ER-200, ER-207 (Compl.); ER-163 (Notice of Change in Benefits); ER-168 (Notice of Recons.).[6] In June 2016, Rosell also began receiving Canadian Old-Age Security pension benefits, an age- and citizenship-based benefit that does not trigger application of the Windfall Elimination Provision. ER-185 (ALJ Decision). From 1990 until 2012, Rosell worked in the United States at jobs that were covered by U.S. Social Security. ER-200 (Compl.); ER-184 (ALJ Decision). Rosell's earnings in Canada were not subject to U.S. Social Security taxes, and his earnings in the U.S. were not subject to Canadian social security taxes. ER-183-84 (ALJ Decision); ER-208 (Compl.).

2. After suffering a stroke, Rosell applied for U.S. Social Security disability insurance benefits based on his years of covered employment in the United States. ER-179 (ALJ Decision). The Social Security Administration awarded Rosell disability benefits in 2013, ER-159 (July 26, 2013 Notice of Award),[7] and awarded Michener related spousal benefits two years later, under 42 U.S.C. 402(b)(2), ER-172 (Notice of Award). The agency subsequently reduced Rosell's benefits pursuant to the Windfall Elimination Provision, 42 U.S.C. 415(a)(7), based on Rosell's receipt of *both* Social Security disability benefits *and* a monthly periodic payment—his Canada Pension Plan

---

[6] The record does not indicate that either Rosell or Michener qualified for and received benefits under the Quebec Pension Plan. This Court can therefore disregard references to that pension program in plaintiff's opening brief.

[7] Rosell received disability benefits until he turned 66, at which point he began receiving Social Security retirement benefits instead, pursuant to 42 U.S.C. 402(a)(3) and 423(a)(1). ER-207 (Compl.); *see also* 20 C.F.R. 404.310(c); 20 C.F.R. 404.316(b)(2).

benefits—that was based on work not covered by Social Security. ER-163 (Notice of Change in Benefits); ER-208 (Compl.). The agency also required Rosell to repay $7194 in overpayments received between April 2013 and June 2015. ER-163 (Notice of Change in Benefits).

After the agency declined to alter its original determination, *see* ER-167-71 (Notice of Recons.), Rosell requested a hearing before an ALJ, who rejected his arguments, *see* ER-176-86 (ALJ Decision).[8] The Appeals Council denied further review, rendering the ALJ's decision final. ER-187-90 (Notice of Appeals Council Action); 42 U.S.C. 405(g); 20 C.F.R. 404.981. Michener did not appeal the reduction of her benefits.

3. Rosell and Michener filed suit in U.S. District Court for the District of Columbia against the agency and the Acting Commissioner of Social Security in her official capacity on behalf of themselves and subclasses of similarly situated individuals whose Social Security disability payments and related spousal benefits were reduced due to their receipt of social security payments from the governments of Canada and 24 other countries. ER-204 (Compl.). Plaintiffs alleged that application of the Windfall Elimination Provision to their Social Security payments (1) violates the Windfall Elimination Provision because plaintiffs' foreign social security pension

---

[8] Rosell claimed that he qualified for the Windfall Elimination Provision's exception for claimants with thirty years of covered employment, but admitted that he met the requirement only by combining his covered U.S. employment with his noncovered employment in Canada. ER-184 (ALJ Decision).

payments are based on earnings for service that constitute "employment" under the foreign countries' laws and are therefore recognized as "employment" under 42 U.S.C. 433(c)(1)(B)(i); (2) violates 20 C.F.R. 404.213(a), which defines noncovered employment to include "pension[s] from * * * social insurance system[s] that base[] benefits on earnings but not on residence or citizenship," because the foreign payments at issue are paid only to current or former citizens or residents of those countries; and (3) violates the U.S.-Canada Totalization Agreement because it fails to treat Canadian citizens residing in the U.S. in the same way that Canada treats U.S. citizens residing in Canada.  ER-216-18 (Compl.).

Plaintiffs sought, among other things, a declaration that the agency's interpretations of 42 U.S.C. 415(a)(7)(A) and (d)(7), 20 C.F.R. 404.213, and the Totalization Agreement were unlawful; injunctions preventing the agency from applying the Windfall Elimination Provision based on receipt of social security payments from the 25 foreign countries, and requiring recalculation of disability and related spousal benefits and payment of back benefits due; and costs and fees. ER-218-20 (Compl.).

After Rosell's death in 2018, Michener proceeded as sole plaintiff on behalf of herself and Rosell's estate.  ER-198 (Order).[9]  The district court then transferred the

_____

[9] Instead of spousal disability or retirement benefits, Michener now receives widow's benefits, which are not reduced pursuant to the Windfall Elimination Provision.  *See* 42 U.S.C. 402(e), 415(f)(9)(B)(ii); 20 C.F.R. 404.213(e)(6).

case to the U.S. District Court for the Northern District of California, where Michener resides.  ER-197 (July 18, 2019 Mem. Op.).  With the consent of the parties, a magistrate judge conducted the district court proceedings.  Both parties moved for summary judgment, and plaintiff moved to certify a plaintiff class consisting of all persons whose Social Security disability benefit or related spousal benefit was reduced based on their receipt of a foreign social security payment from a country with which the United States has a totalization agreement.

4.  The court denied plaintiff's motion for summary judgment, granted the government's cross-motion for summary judgment, and denied plaintiff's motion for class certification as moot.  ER-16 (Order).[10]  Based on the plain language of sections 410, 415, and 433, the court concluded that the Totalization Agreement "does not designate service in Canada, on which no Social Security taxes were paid, as employment or equivalent to employment," and therefore, Rosell's service in Canada was not "employment" under 42 U.S.C. 410 "and the [Windfall Elimination Provision] applies."  ER-11 (Order).  The court agreed with the agency that the text of the Windfall Elimination Provision "equates 'service which did not constitute "employment" as defined in [s]ection 410' with 'noncovered service' on which no Social Security taxes were paid," ER-11 (Order), a reading also supported by the

---

[10] The court sustained the government's objections to declarations submitted by plaintiff in support of her summary judgment motion.  ER-6-7 & n.1 (Order). Plaintiff's opening brief does not address this evidentiary issue, which is therefore waived.

legislative history, ER-12 (Order).  The court found that reading "consistent with the purpose of [s]ection 410," which allows the United States to collect Social Security taxes on work performed by foreign citizens in a foreign country only where the United States and the foreign country have agreed, pursuant to a section 433 totalization agreement, that this work will only be subject to U.S. Social Security taxation.  ER-11 (Order).   Moreover, the court found, the plain reading of section 433 "is that employment in Canada does not constitute employment under [s]ection 410."  ER-12 (Order).  The court reasoned that 42 U.S.C. 433(c)(1)(B), which provides that employment in the U.S. or a foreign country shall result in a period of coverage under one system or the other "but not under both," makes clear that section 433 contemplates "two different and distinct 'employments'—one under the [U.S.] Social Security system and one under a foreign country's system."  ER-12 (Order).

The court found plaintiff's reading of the Totalization Agreement "conclusory and therefore unpersuasive," noting the absence of textual support for plaintiff's argument that the Agreement "'designates employment or its equivalent to include what takes place in both countries.'"  ER-14 (Order).  The court observed that if it accepted plaintiff's position, "there would never be a need to totalize benefits because service in any country with which the United States had a [s]ection 433 agreement would be covered service."  ER-14 (Order).  The court rejected plaintiff's remaining arguments as equally unpersuasive, agreeing with the agency that, among other things,

the Canada Pension Plan is a work-based pension to which the Windfall Elimination Provision's regulatory exception for residence- or citizenship-based pensions does not apply.  ER-15 (Order).[11]

## SUMMARY OF ARGUMENT

At issue here is whether the Social Security Act's Windfall Elimination Provision, which applies to reduce the Social Security benefits of someone who also receives a pension based on noncovered employment, is triggered by the receipt of a foreign pension based on employment that was subject only to the foreign country's social security contribution requirements.  In *Beeler v. Saul*, the only published appellate court decision to decide this question, the Seventh Circuit considered and rejected most of the arguments now advanced in plaintiff's opening brief, and upheld SSA's application of the windfall provision to Social Security retirement benefits. This Court reached the same result in two unpublished opinions.

Plaintiff does not argue that the application of the windfall provision differs in some legally meaningful way for Social Security disability benefits as opposed to retirement benefits.  Instead, plaintiff urges this Court to reverse the district court's decision and go into conflict with the thorough, well-reasoned decision of the Seventh Circuit, by adopting a selective reading of the dissent's analysis in *Beeler*.  Based on an

---

[11] The court also rejected plaintiff's argument that application of the Windfall Elimination Provision violates the "equal treatment provision" in Article IV of the Totalization Agreement.  ER-15-16 (Order).  Plaintiff does not appeal that holding. Pl.'s Br. 13 n.4.

flawed reading of several Social Security Act provisions and the Totalization Agreement between the U.S. and Canada, plaintiff argues that when her late husband, Dr. Steven Rosell, was a Canadian citizen working in Canada, subject only to Canadian law and paying only Canadian social security taxes, he was actually engaged in "employment" as defined by U.S. law. Plaintiff argues that Rosell's Canadian pension benefits based on that work are therefore exempt from the windfall provision.

Plaintiff's novel interpretation would introduce incoherence into the Social Security Act, which defines "employment" for the purpose of establishing future eligibility for benefits and imposing the payroll taxes that fund those benefits. Plaintiff's reading likewise cannot be squared with the Totalization Agreement, which is an international agreement for coordinating between the two countries' domestic social security systems to avoid specific problems such as dual taxation. The Agreement is not a vehicle for importing Canadian law into the U.S. system to change the meaning of key terms for calculating U.S. Social Security benefits. Plaintiff's argument, if accepted, would allow foreign citizens working in foreign countries, paying no U.S. Social Security taxes, to claim a full measure of U.S. Social Security benefits based on work that the foreign country treated as pensionable employment for purposes of its own domestic system, as long as a totalization agreement was in place. This Court should reject plaintiff's novel interpretation of the Act and the Agreement, and affirm the decision of the district court.

17

STANDARD OF REVIEW

The district court judgment is subject to de novo review in this Court. *Larson v. Saul*, 967 F.3d 914, 922 (9th Cir. 2020).

ARGUMENT

As both the district court and plaintiff have acknowledged, this case raises the same legal issue presented in the Seventh Circuit class action *Beeler v. Saul*, 977 F.3d 577 (7th Cir. 2020): Whether the Windfall Elimination Provision applies to reduce the Social Security benefit of a claimant who also receives a foreign pension payment based on earnings for noncovered employment. *See* ER-7 (Order); Dkt. No. 9, at 1 (Pls.' Mot. for a Certification Order). The Seventh Circuit decided this issue in the government's favor with respect to the class of plaintiffs who receive Social Security retirement benefits and related spousal benefits. Plaintiff's late husband, Dr. Steven Rosell, received Social Security disability benefits from April 2013 until he turned 66 in June 2016, at which point he began receiving retirement benefits instead under 42 U.S.C. 402(a)(3) and 423(a)(1). From June 2016 until November 2018, the month before Rosell's death, plaintiff and her husband fell within the *Beeler* plaintiff class and any claims based on their receipt of retirement payments or related spousal benefits are thus foreclosed by the decision in that case.

This leaves only claims related to the three-year period during which SSA applied the Windfall Elimination Provision to reduce Rosell's Social Security disability benefits and plaintiff's related spousal benefits—less than $15,000 total. Plaintiff does

18

not argue that the Windfall Elimination Provision applies differently to Social Security disability benefits than it applies to retirement benefits, and offers no reasoned basis why this Court should go into conflict with the Seventh Circuit. This Court should therefore join the Seventh Circuit in upholding the agency's interpretation of the windfall provision.

I.    The Windfall Elimination Provision Applied To The Social Security Benefits Of Plaintiff And Her Late Husband Because He Received Payments From The Canada Pension Plan Based On Work That Was Not Subject To U.S. Social Security Taxes.

The SSA reduced Rosell's disability benefits and plaintiff's related spousal benefits under the Windfall Elimination Provision because Rosell was also receiving monthly payments from the Canada Pension Plan based on his noncovered employment in Canada. The district court agreed with the agency that the Social Security Act and the U.S.-Canada Totalization Agreement do not designate Rosell's employment in Canada, on which he concededly paid no U.S. Social Security taxes, as employment or equivalent to employment. That decision is correct and should be affirmed.[12]

---

[12] The Government argued below, and continues to maintain, that plaintiff's claims are not properly before this Court because she failed to administratively appeal her spousal benefit decision. However, we acknowledge that the legal issues that plaintiff raises are the same as those raised on behalf of Rosell, whose claims are properly before this Court because he obtained a final agency decision under 42 U.S.C 405(g).

A.     The Plain Language Of The Statute Supports SSA's Interpretation Of The Windfall Elimination Provision.

1. The Windfall Elimination Provision modifies the standard Social Security benefit formula for an individual who is also receiving a "monthly periodic payment * * * which is based in whole or in part upon his or her earnings for service which did not constitute 'employment' as defined in [42 U.S.C.] 410 * * * (hereafter in this paragraph and in [42 U.S.C. 415(d)(3)] referred to as 'noncovered service')." 42 U.S.C. 415(a)(7)(A). Whether this statutory language is clear "is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Hunsaker v. United States*, 902 F.3d 963, 967 (9th Cir. 2018) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

The Windfall Elimination Provision explicitly equates "service which did not constitute 'employment' as defined in section 410" with "noncovered service," on which no Social Security taxes were paid. *See* 42 U.S.C. 415(a)(7)(A); *Beeler*, 977 F.3d at 586. This is consistent with the purpose that the definition of "employment" in 42 U.S.C. 410(a) serves as a building block within the Act. Section 410(a) "does not define 'employment' as an abstract concept or a dictionary entry, detached from coverage by Social Security taxes." *Beeler v. Berryhill*, 381 F. Supp. 3d 991, 996 (S.D. Ind. 2019)), *aff'd*, 977 F.3d 577 (7th Cir. 2020). Through cross-referenced definitions for "wages" and "quarter[s] of coverage" in the Act and parallel provisions in the Internal Revenue Code, section 410(a) delineates what specific types of work will give

20

rise to eligibility for benefits and an obligation to contribute to the Social Security system through payroll taxes.  42 U.S.C. 409; 42 U.S.C. 413(a)(2)(A); 26 U.S.C. 3101(a); 26 U.S.C. 3121(a), (b).

Courts have consistently construed the definition of "employment" in section 410(a) as referring to "covered employment" or self-employment that is subject to Social Security contribution requirements.  *See, e.g.*, *Flemming v. Nestor*, 363 U.S. 603, 608-09 (1960); *see generally Better Business Bureau of Washington v. United States*, 326 U.S. 279 (1945) (denying recovery of Social Security taxes paid by organization that did not fall within an exception to the definition of "employment" in the Social Security Act). In cases specifically construing the Windfall Elimination Provision, courts have used phrases such as "noncovered" wages or employment, "earnings not subject to Social Security tax," and "'noncovered service' on which Social Security taxes were not paid," to indicate "service which did not constitute 'employment' as defined in section 410." *E.g., Das v. Department of Health & Human Servs.*, 17 F.3d 1250, 1253-55 (9th Cir. 1994); *Corbett v. Commissioner of Soc. Sec.*, 523 F. App'x 892, 894 (3d Cir. 2013) (per curiam); *Newton v. Shalala*, 874 F. Supp. 296, 298 (D. Or. 1994), *aff'd*, 70 F.3d 1114 (9th Cir. 1995); *see generally Beeler*, 977 F.3d at 586; *Stroup v. Barnhart*, 327 F.3d 1258, 1259-60 (11th Cir. 2003); *Rudykoff v. Apfel*, 193 F.3d 579, 580-81 (2d Cir. 1999) (per curiam).

Indeed, although the courts disagree over the scope of a separate Windfall Elimination Provision exception for pensions based on service as a member of a uniformed service, every court to construe that exception, including this one, has

recognized and respected the distinction between "covered employment" that was subject to Social Security taxes and "noncovered service" for an employer "who did not withhold social-security taxes." *Larson v. Saul*, 967 F.3d 914, 918 (9th Cir. 2020); *accord Linza v. Saul*, _ F.3d _, No. 19-2766, 2021 WL 852060, *1-3 (2d Cir. 2021); *Babcock v. Commissioner of Soc. Sec.,* 959 F.3d 210, 215-16 (6th Cir. 2020); *Kientz v. Comm'r, SSA*, 954 F.3d 1277, 1278-80 (10th Cir. 2020); *Newton v. Commissioner, Soc. Sec.*, 983 F.3d 643, 647-48 (3d Cir. 2020); *Martin v. Social Sec. Admin., Comm'r*, 903 F.3d 1154, 1156-57 (11th Cir. 2018); *Petersen v. Astrue*, 633 F.3d 633, 634-35 (8th Cir. 2011).

The work that Rosell performed in Canada was subject to Canadian social security tax, not U.S. Social Security tax, and therefore constitutes "noncovered service" for purposes of the Social Security Act. Rosell's receipt of Canada Pension Plan benefits based on that noncovered service appropriately triggered application of the Windfall Elimination Provision to reduce his U.S. Social Security benefits and plaintiff's related spousal benefits. That result is consistent with the decision in *Beeler*, the only published appellate court decision directly on point, as well as with several unpublished decisions of this Court upholding Windfall Elimination Provision reductions similarly based on the receipt of foreign pension payments. *See, e.g., O'Grady v. Massanari*, 8 F. App'x 735, 736-37 (9th Cir. 2001) (Canadian government pension); *Adams v. Halter*, 11 F. App'x 748 (9th Cir. 2001) (English payments); *cf.* Pl.'s Br. 19-20 n.10 (arguing that *O'Grady* is "facially similar" but should not guide this Court's analysis).

22

2.  Plaintiff counters that in the specific context of the Windfall Elimination Provision, the phrase "noncovered service" has an entirely different meaning, not tethered to the payment of Social Security taxes.  Pl.'s Br. 1-2, 12, 15-16, 22-27. Plaintiff argues that the Windfall Elimination Provision "specifically defines 'noncovered service' in terms of 'employment' under [section] 410(a)(C), not on whether U.S. Social Security taxes were paid," and limits the application of this new definition to two specific provisions of section 415.  Pl.'s 15-16, 23-26; *see generally* 42 U.S.C. 415(a)(7)(A) ("*hereafter in this paragraph and in subsection (d)(3)* referred to as 'noncovered service'" (emphasis added)).   Plaintiff contends that Rosell's Canadian work falls within the definition of "employment" in 42 U.S.C. 410(a)(C) as "service, regardless of where or by whom performed, which is designated as employment or recognized as equivalent to employment under an agreement entered into under section 433 of this title," because the totalization agreement between the United States and Canada designates and recognizes as equivalent to employment paid work in both countries.  Pl.'s Br. 11-12, 16-20.

a.  Plaintiff's arguments, which draw heavily on portions of the *Beeler* dissent, fail for multiple reasons.  As a threshold matter, plaintiff's assertion that "noncovered services" has one meaning for the Windfall Elimination Provision and another for the rest of the Act runs afoul of the statutory canon against assuming "that Congress silently attaches different meanings to the same term in the same * * * statute."  *U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*, 140 S. Ct. 1837, 1845 (2020) (cleaned up).

23

Not a single court has adopted plaintiff's novel reading of "noncovered service." On the contrary, the only case directly on point held that the language at issue "is properly read as matching 'service which did not constitute "employment" as defined in section 410' with 'noncovered service' *on which Social Security taxes were not paid*." *Beeler*, 977 F.3d at 586 (emphasis added).[13]

Plaintiff argues that the district court's interpretation of "noncovered service" renders the Windfall Elimination Provision's cross-reference to section 410 meaningless. Pl.'s Br. 31-32. Plaintiff is mistaken. Because section 410 defines "employment" for purposes of the Social Security contribution, "noncovered service" and "service which did not constitute 'employment' as defined in section 410" mean the same thing. It is not unusual for Congress to clarify its intention by inserting an explanatory parenthetical into legislation. *See, e.g.*, *Chickasaw Nation v. United States*, 534 U.S. 84, 89 (2001) (rejecting tribe's interpretation of Indian Gaming Regulatory Act provision where "the language outside the parenthetical is unambiguous * * * [and] says without qualification that the subsection applies to 'provisions * * * concerning the reporting and withholding of taxes.' And the language inside the parenthetical, prefaced with the word 'including,' literally says the same.").

---

[13] Contrary to plaintiff's assertion (Pl.'s Br. 25-26), section 415 does not narrowly define "noncovered service" in terms of "employment" as defined by section 410(a)(C). It equates "noncovered service" with "service which did not constitute 'employment' as defined in *section 410 of this title for purposes of this subchapter*," 42 U.S.C. 415(a)(7)(A) (emphasis added), *i.e.*, to determine whose wages are subject to the Social Security contribution requirement.

24

The *Beeler* dissent likewise posits that the category of services encompassed by section 410(a)'s definition of "employment" includes work that is not subject to Social Security payroll taxes. *Beeler*, 977 F.3d at 594, 598 n.5 (St. Eve, J., dissenting). The dissent does not explain what those services are, who falls in that category (other than Beeler), and how this notion squares with the interrelated provisions of the Act and the Internal Revenue Code, which impose the Social Security payroll tax on all wages for "employment" as defined by 26 U.S.C. 3121(b), the parallel definition of section 410(a). If Congress had intended to alter the fundamental details of Social Security funding, it would have done so directly and not through the Windfall Elimination Provision. *See generally Epic Sys. Corp. v Lewis*, 138 S. Ct. 1612, 1626-27 (2018) (noting the "usual rule that Congress does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes") (cleaned up).

b. Rosell's work in Canada between 1976 and 1990, before he became a U.S. citizen, did not constitute "employment" under section 410(a)(C). Congress added section 410(a)(C) to enable the Social Security taxation of work performed by foreign citizens in a foreign country in circumstances where the United States and the foreign country had agreed that the work should be subject to taxation only under the U.S. system in accordance with a totalization agreement. "This subsection would not apply to services performed in Canada that were never subject to Social Security taxes," *see Beeler*, 977 F.3d at 587, such as Rosell's work here. If Rosell's work in Canada was

considered "employment" under section 410(a)(C), it would have been subject to U.S. Social Security taxation pursuant to the U.S.-Canada Totalization Agreement—and there is no dispute that this was not the case. *See generally id.*

One "useful example" of "service, regardless of where or by whom performed, which is designated as employment or recognized as equivalent to employment" under a totalization agreement (42 U.S.C. 410(a)(C)) would be the situation addressed by Article V(2)(a) of the Agreement, where "an employee working in the United States is sent by her employer to work in Canada" for less than sixty months, during which time she "continues to accrue coverage under the Act, not under Canada's social security laws." *Beeler*, 381 F. Supp. 3d at 1001; ER-11-12 (Order). In this scenario, the worker continues to pay U.S. Social Security taxes while working in Canada, and her contributions count toward the calculation of her eventual U.S. Social Security benefits, because the U.S. and Canada have agreed that her services should be subject to the U.S. Social Security contribution requirement. The whole point of section 410(a)(C) is to maintain the individual's contributions and eligibility for U.S. Social Security benefits. Unlike the worker in this example, during the relevant time period Rosell was a Canadian citizen, working continuously in Canada, contributing to the Canada Pension Plan, and building eligibility in the Canadian system rather than the U.S. Social Security system. *See generally Beeler*, 977 F.3d at 589 & n.6.

26

c.  Finally, plaintiff's arguments hinge on her interpretation of the U.S.-Canada Totalization Agreement, which does not purport to define "employment," "coverage," or "period of coverage" for purposes of the Social Security Act.  *See generally Beeler*, 977 F.3d at 587; *accord* ER-13-14 (Order).  Article I of the Agreement specifies that "[a]ny term not defined in this Article has the meaning assigned to it in the applicable laws," which, according to Article II(1), are the Social Security Act and the Internal Revenue Code for the United States, the Old Age Security Act and the Canada Pension Plan for Canada, and various regulations.  *See generally Beeler*, 977 F.3d at 587.  Plaintiff seizes on, *inter alia*, Article I to argue that "employment" should be given the meaning assigned to it under *Canadian* law because when Rosell was a Canadian citizen working in Canada, (1) he was "an employed person" under Article V(1) of the Agreement, subject only to Canadian law, and (2) under Canadian law, his work was considered "employment" and his social security coverage was assigned to the Canada Pension Plan, the relevant local law under the Agreement.  Reasoning backwards from Canadian law to U.S. law, plaintiff concludes that Rosell's work in Canada was therefore "designated as employment or recognized as equivalent to employment under" the Totalization Agreement and should be considered "employment" under 42 U.S.C. 410(a)(C) for purposes of the Windfall Elimination Provision.  Pl.'s Br. 17-19, 33, 37.

Plaintiff's circuitous analysis presumes that by entering into the Totalization Agreement, the U.S. and Canada agreed that a wholly domestic decision—Canada's

decision that its own citizen's earnings in Canada were subject to the Canada Pension Plan payroll tax—was now automatically a decision allocating coverage "under" the Agreement. *See generally Beeler*, 977 F.3d at 597-98 (St. Eve, J., dissenting). But Congress authorized the Agreement to foster cooperation between the two countries because their laws and pension systems *operate differently*. *Accord Beeler*, 977 F.3d at 588. The Agreement allows coordination at points of intersection between the Social Security system and the Canada Pension Plan, "to avoid problems with dual taxation, or with continuity of benefits," "but not for all purposes." *Id.* The Agreement does not merge the two distinct social security systems, or work backward to alter the meaning of terms like "covered employment" in the Social Security Act. *Id.*[14]

Plaintiff's reading of the statute and the Agreement, if accepted, would lead to anomalous results. As a threshold matter, foreign pension holders would receive a windfall relative to all other workers who receive *both* Social Security retirement or disability benefits *and* pensions from noncovered earnings, including state and local

---

[14] In a similar vein, courts have rejected the argument that once a totalization agreement with another country is in place, periods of coverage in both countries are indistinguishable and should be combined for purposes of the Windfall Elimination Provision exception for thirty years of substantial covered earnings, 42 U.S.C. 415(a)(7)(D), or for purposes of the claimant's Social Security benefit amount calculation (as opposed to his eligibility for benefits). *See, e.g., Newton,* 874 F. Supp. at 298-300; *Kamyk v. Colvin*, No. 15 C 4229, 2016 WL 4798955, at *3 (N.D. Ill. Sept. 14, 2016) (unpublished), *aff'd*, 695 F. App'x 947 (7th Cir. 2017) (unpublished). As these cases confirm, courts have refused to treat work in a foreign country as equivalent to work in the U.S. for purposes other than establishing benefit eligibility as specifically provided by a totalization agreement. *Cf.* Pl.'s Br. 15 n.5.

employees like police and firefighters. Plaintiff "would rewrite a provision designed to eliminate windfalls into a windfall guarantee." *Beeler*, 381 F. Supp. 3d at 1006. That would be an extraordinary result given the reasons for the Windfall Elimination Provision's enactment. *See supra* pp. 4-5. Even the *Beeler* dissent doubted that this was Congress' intent. *See Beeler*, 977 F.3d 598 (St. Eve, J., dissenting). Plaintiff contends that this outcome is a product of Congress' decision to delegate control over social security-related matters to bilateral social security agreements. Pl.'s Br. 20; Pl.'s Br. 2. But as the Seventh Circuit pointed out, such an agreement between countries—with the United States setting its Social Security payments based on another country's definition of "employment," "with the President through an international agreement obligating the U.S. Treasury, notwithstanding Congress setting those definitions under the [Social Security] Act"—would raise serious separation of powers concerns. *See Beeler*, 977 F.3d 589.

Moreover, if work performed in a foreign country constitutes "employment" under the Social Security Act so long as a totalization agreement is in place, "then workers can claim benefits from a sovereign that did not tax them to fund those benefits." *Beeler*, 977 F.3d at 588. The fact that neither plaintiff nor Rosell sought U.S. Social Security benefits based on Rosell's Canadian employment (Pl.'s Br. 33, 38) is irrelevant; her reading of the Agreement and section 410(a)(C) would allow them to do so. Not surprisingly, the Seventh Circuit found that this reading of the Agreement "cannot be reconciled" with 42 U.S.C. 433(c)(1)(B)(i), which provides that

"employment" or its equivalent in the Social Security system or the system of a foreign country that is a party to a totalization agreement "shall * * * result in a period of coverage" under the U.S. system or the system of the foreign country, "but not under both." *Beeler*, 977 F.3d at 588; ER-12 (Order) (same).[15]

Plaintiff's flawed reading of the statute and Agreement would also render several provisions of the Act superfluous, another result to avoid. *See generally City of Chicago v. Fulton*, 141 S. Ct. 585, 591 (2021) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). If "all periods of coverage under the foreign pension system * * * translate into periods of coverage under the Act," that would "erase the distinction between work performed in a foreign country and work in the United States," and there would be no reason to totalize benefits—"the very reason for a totalization agreement." *Beeler*, 977 F.3d at 588-89; ER-14 (Order). Section 433's authorization of totalization agreements would be meaningless, as would section 415(a)(7)(A)(II)'s exemption from the Windfall Elimination Provision for foreign pension payments based on totalized periods of coverage.

Plaintiff dismisses this argument as a "red herring" that conflates "employment," which plaintiff views as an issue of local (here, Canadian) law, with

---

[15] Plaintiff's statement that the "not under both" language "means that benefits from the two countries may be combined to qualify for social security benefits under one country's system, not two," Pl.'s Br. 33, is incorrect. This provision allocates coverage to prevent dual taxation; it does not address totalization.

"coverage" governed separately by the Agreement. Pl.'s Br. 37. Plaintiff also insists that the Agreement's allocation of coverage between the U.S. and Canada, and statutory language limiting "noncovered service" to two provisions of section 415, would allow this Court to hold that Rosell's work in Canada should be considered "employment" under section 410(a)(C) without holding that all Canadian employment should be considered U.S. employment for all purposes of the Social Security Act. Pl.'s Br. 37-38. The Act does not draw these distinction, or limit the meaning of "employment" in section 410(a)(C) solely for purposes of the Windfall Elimination Provision. Section 410(a) defines "employment" for multiple purposes in the Act, including for establishing the quarters of coverage necessary to establish benefit eligibility and calculate benefit amounts. If Rosell's noncovered work in Canada is considered equivalent to his covered U.S. employment, the Act would treat him as someone who worked his entire career in the U.S. in covered employment, despite the fact that he paid Social Security taxes on only a fraction of his career earnings. And contrary to plaintiff's contention, the Act would treat Rosell that way regardless of the Totalization Agreement's allocation of coverage and limitations on double-counting coverage for purposes of totalization. *See* Add. 36 (under Article VII(1) of the Totalization Agreement, periods of Canada Pension Plan coverage will be taken into account for totalization purposes only "to the extent they do not coincide with calendar quarters already credited as quarters of coverage under United States laws").

31

This Court must interpret the Act "as a symmetrical and coherent regulatory scheme and fit, if possible, all parts into a harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133 (2000) (cleaned up). Plaintiff's interpretation of the Act and the Agreement should therefore be rejected.

B.    The Legislative History Confirms The Correctness Of SSA's Interpretation.

The district court found that the legislative history supports the agency's plain reading of section 415. ER-12 (Order). The court's consideration of the legislative history is consistent with circuit precedent holding that courts should examine the legislative history of a statute, in addition to its text, object and policy, and surrounding provisions, in order to discern whether a particular provision is ambiguous. *E.g., Larson*, 967 F.3d at 922; *cf.* Pl.'s Br. 12, 27-31.

The legislative history of the provisions at issue is fully consistent with the statutory text and strongly supports the agency's interpretation. For instance, congressional reports for the legislation enacting the Windfall Elimination Provision consistently refer to "noncovered employment," "noncovered work," and "employment not covered by Social Security" to indicate "service which did not constitute 'employment' as defined in [42 U.S.C. 410]," 42 U.S.C. 415(a)(7)(A). *See generally* H.R. Rep. No. 98-47, at 120; S. Rep. No. 98-23, at 5-6, 15-16 (1983); H.R. Rep. No. 98-25, pt. 1, at 4, 21-22, 45-46. These reports underscore that, contrary to plaintiff's contention (Pl.'s Br. 27-28), Congress did not define "noncovered service"

32

differently for the narrow purpose of section 415(a)(7)(A).  Congress utilized a so-called "generic" (Pl.'s Br. 27) distinction between covered and noncovered employment that was well established in the case law.

Legislative materials likewise confirm that Congress adopted the definition of "employment" at 42 U.S.C. 410(a)(C) to correct "an inadvertent drafting error" that had prevented the United States from taxing earnings from work in a foreign country that the United States and the foreign country had agreed, pursuant to a totalization agreement, should be taxed and covered *only* under the U.S. Social Security system. *See* H.R. Rep. No. 98-47, at 150; H.R. Rep. No. 98-25, pt. 1, at 75, 96-97.  Nothing in these congressional reports indicates that Congress intended the text of section 410(a)(C) to encompass *all* work performed in a foreign country that has a totalization agreement with the United States in place, regardless of whether the Contracting States agreed that the work was covered by the U.S. Social Security system and subject to U.S. taxation.

Finally, congressional reports accompanying the 1994 enactment of the Windfall Elimination Provision's exception for totalized foreign pension payments shed further light on Congress' understanding of who was, and who should be, subject to the Windfall Elimination Provision.  The conference report states that the Windfall Elimination Provision's exception

> would disregard the windfall elimination provision in computing any
> U.S. totalization benefit, and in computing the amount of a regular U.S.
> benefit of an individual who (1) receives a foreign totalization benefit

33

> based in part on U.S. employment and (2) *does not receive any other pension which is based on non-covered employment.*

H.R. Rep. No. 103-670, at 124 (emphasis added); *see also* H.R. Rep. No. 103-506, at 67. In other words, Congress expected that the Windfall Elimination Provision would still apply if an individual received U.S. Social Security benefits, a totalized foreign payment, and another payment based on noncovered service. As House Report No. 103-506 makes clear, the reason for excluding totalized foreign pension payments from the Windfall Elimination Provision was that such payments were based in part on U.S.-covered work that was subject to Social Security contribution requirements, and therefore should not be considered noncovered employment. H.R. Rep. No. 103-506, at 67. The legislative materials do not indicate that Congress even considered exempting *all* foreign pension payments, as it easily could have done if that had been its intention.

Plaintiff's contention (Pl.'s Br. 30 n.14) that all of these reports are "irrelevant" to her case, which "involves neither double taxation nor 'totalized' benefits," misses the point. The legislative history of the Windfall Elimination Provision and the other provisions at issue are "best understood in light of [their] evolution." *See generally Chemical Mfrs. Ass'n v. Natural Res. Def. Council, Inc.*, 470 U.S. 116, 126 (1985). The reports underscore that Congress has repeatedly revised these provisions over time to accomplish specific purposes that are directly at odds with the notion of exempting all foreign pension holders from the Windfall Elimination Provision—or even more

34

implausibly, singling out individuals with pensions from foreign countries that happen to have totalization agreements with the United States.[16]

    C.    SSA's Interpretation Of The Windfall Elimination Provision Is A Reasonable And Longstanding Exercise Of Its Authority To Interpret The Statute It Administers.

The district court ruled in the agency's favor based on the plain language of sections 415, 410, and 433, and therefore did not consider whether the agency's interpretation was entitled to deference. ER-11 (Order); *see generally Beeler*, 977 F.3d at 584 n.3. To the extent that this Court finds the text of the statute to be ambiguous, the agency's interpretation is reasonable, within the agency's longstanding authority, and entitled to considerable deference. *But cf.* Pl.'s Br. 12, 34-35. A similar argument applies with respect to the Totalization Agreement. *But cf.* Pl.'s Br. 37-38.

    1.    Congress Delegated Broad Authority To SSA To Interpret The Social Security Act.

Congress expressly delegated to SSA "full power and authority to make rules and regulations" for determinations of an individual's entitlement to Social Security benefits. 42 U.S.C. 405(a);[17] *Larson*, 967 F.3d at 925; *see generally Schweiker v. Gray*

---

[16] House Report No. 103-670 (1994) and House Report No. 98-47 (1983) are conference reports, which are "recognized as the most reliable evidence of congressional intent because [they] 'represent[] the final statement of the terms agreed to by both houses.'" *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 835 (9th Cir. 1996).

[17] *See also* 42 U.S.C. 433(d) (authorizing Commissioner of Social Security to "make rules and regulations and establish procedures which are reasonable and necessary to implement and administer" any totalization agreement).

*Panthers*, 453 U.S. 34, 43 (1981) (noting that Congress "conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the Act"). The Supreme Court has stated that "[t]he statute's complexity, the vast number of claims that it engenders, and the consequent need for agency expertise and administrative experience lead us to read the statute as delegating to the Agency considerable authority to fill in, through interpretation, matters of detail related to its administration." *Barnhart v. Walton*, 535 U.S. 212, 225 (2002) (challenge to denial of disability insurance benefits).

The definition of "employment," for purposes of the Totalization Agreement and the Windfall Elimination Provision, affects the calculation of Social Security disability benefits and falls within Congress's express delegation to the agency.

2. The Government's Interpretation Of The Statute And The Totalization Agreement Are Persuasive And Entitled To Deference.

If Congress has not spoken to the precise question at issue, then the court must sustain the agency's interpretation if it is "'based on a permissible construction' of the Act." *Barnhart v. Walton*, 535 U.S. at 218. Under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the "view of the agency charged with administering the statute is entitled to considerable deference; and to sustain it, [this Court] need not find that it is the only permissible construction that [the agency] might have adopted." *Chemical Mfrs. Ass'n*, 470 U.S. at 125. In deciding whether an agency's interpretation embodied in a regulation is entitled to *Chevron* deference,

36

courts consider "the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time." *Barnhart v. Walton*, 535 U.S. at 222.

a. The agency's interpretation of the Windfall Elimination Provision is codified in an implementing regulation, 20 C.F.R. 404.213, that was adopted in 1987 after notice and comment rulemaking. As we demonstrate, *infra* § II, the regulation is reasonable and consistent with the text of the statute itself. Moreover, the agency's interpretation is longstanding and has been consistent over time, factors that further support deference. *See generally Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 558 (2012); *Barnhart v. Walton*, 535 U.S. at 220. The agency has consistently advanced its interpretation of the statute in litigation over the application of the Windfall Elimination Provision to individuals who receive foreign pension payments based on employment on which they did not pay U.S. Social Security taxes. *See, e.g.*, *O'Grady*, 8 F. App'x 735 (upholding Windfall Elimination Provision modification based on receipt of Canada pension); *Adams*, 11 F. App'x 748 (same, based on English payments); *Newton*, 874 F. Supp. 296 (same, based on German social security benefits); *accord Hawrelak v. Colvin*, 667 F. App'x 161 (7th Cir. 2016) (same, based on Canada Pension Plan benefits).

SSA's Program Operations Manual System, which is entitled to "respect," *Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S.

37

371, 385 (2003), likewise reflects (and has reflected) the same interpretation of the

statute and provides detailed instruction on, for instance, what types of foreign

pension payments do not trigger the Windfall Elimination Provision.  As relevant

here, the POMS provides that

> A foreign pension based on post-1956 work will trigger [Windfall
> Elimination Provision] if it is * * * a private or governmental pension
> from a country which does not have a totalization agreement with the
> U.S., or * * * a private or governmental pension from a country which
> does have a totalization agreement with the U.S.—if the individual is
> receiving a nontotalized U.S. benefit and the foreign pension is not
> based on a totalization agreement with the United States.

SSA, *POMS,* GN 00307.290.C.3*, supra*; *id.* (citing Canada as example of a country with

a two-tiered social security system, with some benefits, *e.g.*, Canada Pension Plan

payments, that are directly related to work and earnings, while others, *e.g.*, Old Age

Security program payments, are residence-based and do not trigger the Windfall

Elimination Provision).

b.  In a similar vein, as stated above, *supra* pp. 27-32, the Government does not

consider covered employment under the Totalization Agreement to include *all*

employment performed by foreign citizens for a foreign employer in a foreign

country.  The Government's interpretation of whether and how the Agreement

applies is reasonable and consistent with 42 U.S.C. 433, the statute that authorized the

President to enter into the Totalization Agreement and that specifies many of the

terms contained in the agreement.  *See Republic of Sudan v. Harrison*, 139 S. Ct. 1048,

1060 (2019) ("It is * * * well settled that the Executive Branch's interpretation of a

treaty is entitled to great weight.") (cleaned up). As previously stated, reading the Totalization Agreement to require the United States to recognize Rosell's Canadian employment as covered employment for purposes of the Social Security Act, as plaintiff urges, would "erase the distinction between work performed in a foreign country and work in the United States," and thereby remove "the very reason for a totalization agreement." *Beeler*, 977 F.3d 589.

II.     Implementing Regulation 20 C.F.R. 404.213 Does Not Exempt Canada Pension Plan Benefits From Application Of The Windfall Elimination Provision.

Finally, plaintiff contends that the implementing regulation 20 C.F.R. 404.213 excludes from the Windfall Elimination Provision "[p]ensions from noncovered employment outside the United States" that are based on residence or citizenship. Plaintiff reasons that application of the Windfall Elimination Provision to Rosell's disability benefits and her spousal benefits violates the implementing regulation because Canada Pension Plan benefits are based on residence or citizenship. Pl.'s Br. 2, 4, 12-13, 39-46. Even the *Beeler* dissent, on which plaintiff relies, rejected this argument. *See Beeler*, 977 F.3d at 594 n.1 (St. Eve, J., dissenting) ("The majority rightly rejects [Beeler's] contrary interpretation of this regulation."). This Court should do the same.

A.     The Implementing Regulation Is Consistent With The Text Of The Windfall Elimination Provision.

As relevant here, the implementing regulation states:

> Noncovered employment includes employment outside the United States which is not covered under the United States Social Security system. Pensions from noncovered employment outside the United States include both pensions from social insurance systems that base benefits on earnings but not on residence or citizenship, and those from private employers.

20 C.F.R. 404.213(a)(3). The Seventh Circuit held that "[t]he letter of this regulation is consistent with the clear and unambiguous text of the [Windfall Elimination Provision], which states it applies to payments based on 'noncovered services'" and "does not draw any distinctions based on where the noncovered service was performed." *Beeler*, 977 F.3d at 591.

Plaintiff argues that the regulatory exemption, on its face, is not limited to foreign pensions that are based "solely" or "only" on residence or citizenship. Pl.'s Br. 13, 39, 42-45. In fact, that reading follows directly from the plain language of the Windfall Elimination Provision, which applies when a Social Security claimant also receives a pension payment that is based "in whole or in part" on "earnings" for noncovered service, with the remainder based on citizenship, residence, or any other factor. *See* 42 U.S.C. 415(a)(7)(A) (Windfall Elimination Provision applies when claimant also receives, *inter alia*, "a monthly periodic payment * * * which is based *in whole or in part* upon his or her earnings" for noncovered service) (emphasis added); *cf.* SSA, *POMS*, GN 01701.320.B (Jan. 9, 2009), https://go.usa.gov/xdTqX ("Foreign pensions that are based on work or a combination of work and nonwork factors may cause the [Windfall Elimination Provision] to apply."). Because the amount of a

Canada Pension Plan benefit "is determined by reference to a worker's contributions from their wages," Pl.'s Br. 42, Rosell's Canada Pension Plan payment was based "in whole or in part" upon his earnings from noncovered service. Accordingly, the regulatory exemption does not apply. *See Beeler*, 977 F.3d at 592 (rejecting plaintiff's argument as "contrary to the provision's plain language").[18]

B. The *Rabanal* Decision Is Factually Distinguishable And Legally Incorrect.

To support her reading of the regulation, plaintiff relies on (Pl.'s Br. 43-44) language in *Rabanal v. Colvin*, 987 F. Supp. 2d 1106 (D. Colo. 2013), stating that 20 C.F.R. 404.213(a)(3) precludes application of the Windfall Elimination Provision to payments from foreign social insurance systems that base benefits in part on residence or citizenship "regardless" of whether the benefits are also based on earnings. The Seventh Circuit dismissed the *Rabanal* decision as "not persuasive," pointing out that the statement on which plaintiff relies is dictum: "[T]hat case's holding was that the provision applied only to noncovered benefits on 'earnings' and that the agency erred by equating 'earnings' with 'work.'" *Beeler*, 977 F.3d at 591.

Moreover, *Rabanal* interprets 20 C.F.R. 404.213(a)(3) by supplying language—*i.e.*, "regardless of whether it is also based on earnings," 987 F. Supp. 2d at 1112—that

---

[18] Because the regulation's meaning is plain, there is no occasion for the Court to consider whether to defer to the agency's interpretation under *Auer v. Robbins*, 519 U.S. 452 (1997). *See generally Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) (setting out multi-part test for deciding whether to defer to ambiguous regulation); *cf.* Pl.'s Br. 45-46.

41

is not found in either the Windfall Elimination Provision or the regulation itself. No court has ever adopted the *Rabanal* dicta, and the Seventh Circuit expressly declined to do so "because it runs contrary to the plain text of the provision and the totalization agreement." *Beeler*, 977 F.3d at 591. The Seventh Circuit also observed that in *Rabanal* the agency had conceded the "determinative fact" that the claimant's Spanish benefits were based on his citizenship status. The agency made no such concession in *Beeler*, or in this case. *See Beeler*, 977 F.3d at 591-92.

### C. Canada Pension Plan Benefits Are Based On Earnings, Not Residence Or Citizenship.

In any event, plaintiff's assertion that the Canada Pension Plan is a residence- or citizenship-based pension (Pl.'s Br. 40-45) is factually incorrect. *Accord Beeler*, 977 F.3d at 591; ER-15 (Order). Plaintiff reasons (Pl.'s Br. 40-41) that to contribute toward or collect Canada Pension Plan benefits, an individual must have a Canadian social insurance number available only to Canadian citizens and legal residents. *See generally* Gov't of Canada, *Social Insurance Number—Eligibility* (last modified Apr. 9, 2020), https://www.canada.ca/en/employment-social-development/services/sin/eligibility.html. Moreover, plaintiff argues, Canada Pension Plan contributions are taxed on "pensionable employment," which is defined with respect to Canadian residency. Pl.'s Br. 41. The fact that individuals such as Rosell continue to receive Canada Pension Plan benefits even if they do not "currently reside[] in Canada * * * undercuts" plaintiff's argument. *See generally Beeler*,

42

977 F.3d at 591. Even assuming that citizenship or residency are indirectly relevant "when the work occurs" to establish eligibility to contribute to the system (Pl.'s Br. 44), the benefits themselves, when paid, are based on the worker's earnings. And 20 C.F.R. 404.213(a)(3) excludes only "pensions from social insurance systems that base *benefits* * * * on residence or citizenship" (emphasis added), not systems that base *eligibility for benefits* on those factors.

The Seventh Circuit pointed out that Canada has a separate, legal status- and residence-based program—the Old Age Security program—which provides payments to seniors, funded out of general tax revenues. *Beeler*, 977 F.3d at 591 (citing Gov't of Canada, *Old Age Security:—Overview* (last modified Dec. 31, 2020), https://www.canada.ca/en/services/benefits/publicpensions/cpp/old-age-security.html). "This program pays benefits regardless of employment history, unlike the Canada [Pension Plan] * * * benefits which depend on an individual's employment history." *Beeler*, 977 F.3d at 591; *accord* SSA, *POMS*, GN 00307.290.C6, *supra* (noting that Canada has a two-tiered social security system with residence-based payments under the Old Age Security program to which the Windfall Elimination Provision does not apply, in contrast with the earnings-based Canada Pension Plan payments to which the Windfall Elimination Provision applies). Plaintiff is undoubtedly familiar with the distinction between the two programs, because, as the record reflects, Rosell received both Canada Pension Plan *and* Old Age Security payments until his death. *See* ER-185 (ALJ Decision). Plaintiff offers no plausible reason why this Court should

43

conclude that Canada created two separate but parallel residence- or citizenship-based pension systems. *Cf.* Pl.'s Br. 44-45.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

*Of Counsel:*

ROYCE MIN
  *General Counsel*

STACEY W. HARRIS
  *Attorney, Office of Program Law*
  *Office of the General Counsel*
  *Social Security Administration*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

STEPHANIE HINDS
  *Acting United States Attorney*

SHARON SWINGLE

  *s/ Sushma Soni*
SUSHMA SONI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7218*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4331*
  *Sushma.soni@usdoj.gov*

March 2021

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellee states that it knows of no related case pending in this Court.

*s/ Sushma Soni*
SUSHMA SONI

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,043 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Sushma Soni*
SUSHMA SONI

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2021, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Sushma Soni*
SUSHMA SONI

**ADDENDUM**

# TABLE OF CONTENTS

<u>Page</u>

26 U.S.C. § 3101(a) (excerpt) ........................................................................ Add. 1

26 U.S.C. § 3121(a)-(b) (excerpt) ................................................................ Add. 2

42 U.S.C. § 409(a) (excerpt) ........................................................................ Add. 3

42 U.S.C. § 410(a) (excerpt) ........................................................................ Add. 4

42 U.S.C. § 413(a)(2)(A) (excerpt)............................................................... Add. 13

42 U.S.C. § 415(a)(7) (excerpt) .................................................................... Add. 14

42 U.S.C. § 415(d)(3) (excerpt) .................................................................... Add. 17

42 U.S.C. § 433(a)-(e) .................................................................................. Add. 18

20 C.F.R. § 404.213(a) (excerpt).................................................................. Add. 20

POMS GN 00307.290 .................................................................................. Add. 21

POMS GN 01701.320 .................................................................................. Add. 28

Agreement Between the Government of the United States of America
    and the Government of Canada with Respect to Social Security,
    Can.-U.S., Mar. 11, 1981, 35 U.S.T. 3405............................................Add. 29

**26 U.S.C. § 3101. Rate of tax (excerpt)**

**(a) Old-age, survivors, and disability insurance**

In addition to other taxes, there is hereby imposed on the income of every individual a tax equal to 6.2 percent of the wages (as defined in <u>section 3121(a)</u>) received by the individual with respect to employment (as defined in <u>section 3121(b)</u>)….

**26 U.S.C. § 3121. Definitions (excerpt)**

**(a) Wages.**

For purposes of this chapter, the term "wages" means all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash….

**(b) Employment.**

For purposes of this chapter, the term "employment" means any service, of whatever nature, performed (A) by an employee for the person employing him, irrespective of the citizenship or residence of either, (i) within the United States, or (ii) on or in connection with an American vessel or American aircraft under a contract of service which is entered into within the United States or during the performance of which and while the employee is employed on the vessel or aircraft it touches at a port in the United States, if the employee is employed on and in connection with such vessel or aircraft when outside the United States, or (B) outside the United States by a citizen or resident of the United States as an employee for an American employer (as defined in subsection (h)), or (C) if it is service, regardless of where or by whom performed, which is designated as employment or recognized as equivalent to employment under an agreement entered into under section 233 of the Social Security Act….

Add. 2

**42 U.S.C. § 409. "Wages" defined (excerpt)**

**(a) In general**

For the purposes of this subchapter, the term "wages" means remuneration paid prior to 1951 which was wages for the purposes of this subchapter under the law applicable to the payment of such remuneration, and remuneration paid after 1950 for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash….

**42 U.S.C. § 410.  Definitions relating to employment (excerpt)**

**(a) Employment**
The term "employment" means any service performed after 1936 and prior to 1951 which was employment for the purposes of this subchapter under the law applicable to the period in which such service was performed, and any service, of whatever nature, performed after 1950 (A) by an employee for the person employing him, irrespective of the citizenship or residence of either, (i) within the United States, or (ii) on or in connection with an American vessel or American aircraft under a contract of service which is entered into within the United States or during the performance of which and while the employee is employed on the vessel or aircraft it touches at a port in the United States, if the employee is employed on and in connection with such vessel or aircraft when outside the United States, or (B) outside the United States by a citizen or resident of the United States as an employee (i) of an American employer (as defined in subsection (e) of this section), or (ii) of a foreign affiliate (as defined in section 3121(l)(6) of the Internal Revenue Code of 1986) of an American employer during any period for which there is in effect an agreement, entered into pursuant to section 3121(l) of such Code, with respect to such affiliate, or (C) if it is service, regardless of where or by whom performed, which is designated as employment or recognized as equivalent to employment under an agreement entered into under section 433 of this title; except that, in the case of service performed after 1950, such term shall not include—

   **(1)** Service performed by foreign agricultural workers lawfully admitted to the United States from the Bahamas, Jamaica, and the other British West Indies, or from any other foreign country or possession thereof, on a temporary basis to perform agricultural labor;

   **(2)** Domestic service performed in a local college club, or local chapter of a college fraternity or sorority, by a student who is enrolled and is regularly attending classes at a school, college, or university;

   **(3)(A)** Service performed by a child under the age of 18 in the employ of his father or mother;
      **(B)** Service not in the course of the employer's trade or business, or domestic service in a private home of the employer, performed by an individual under the age of 21 in the employ of his father or mother, or performed by an individual in the employ of his spouse or son or daughter; except that the provisions of this subparagraph shall not be applicable to such domestic service performed by an individual in the employ of his son or daughter if--

**(i)** the employer is a surviving spouse or a divorced individual and has not remarried, or has a spouse living in the home who has a mental or physical condition which results in such spouse's being incapable of caring for a son, daughter, stepson, or stepdaughter (referred to in clause (ii)) for at least 4 continuous weeks in the calendar quarter in which the service is rendered, and

**(ii)** a son, daughter, stepson, or stepdaughter of such employer is living in the home, and

**(iii)** the son, daughter, stepson, or stepdaughter (referred to in clause (ii)) has not attained age 18 or has a mental or physical condition which requires the personal care and supervision of an adult for at least 4 continuous weeks in the calendar quarter in which the service is rendered;

**(4)** Service performed by an individual on or in connection with a vessel not an American vessel, or on or in connection with an aircraft not an American aircraft, if (A) the individual is employed on and in connection with such vessel or aircraft when outside the United States and (B)(i) such individual is not a citizen of the United States or (ii) the employer is not an American employer;

**(5)** Service performed in the employ of the United States or any instrumentality of the United States, if such service--

**(A)** would be excluded from the term "employment" for purposes of this subchapter if the provisions of paragraphs (5) and (6) of this subsection as in effect in January 1983 had remained in effect, and

**(B)** is performed by an individual who--

**(i)** has been continuously performing service described in subparagraph (A) since December 31, 1983, and for purposes of this clause--

**(I)** if an individual performing service described in subparagraph (A) returns to the performance of such service after being separated therefrom for a period of less than 366 consecutive days, regardless of whether the period began before, on, or after December 31, 1983, then such service shall be considered continuous,

**(II)** if an individual performing service described in subparagraph (A) returns to the performance of such service after being detailed or transferred to an international organization as described under section 3343 of subchapter III of chapter 33 of Title 5 or under section 3581 of chapter 35 of such Title, then the service performed for that organization shall be considered service described in subparagraph (A),

**(III)** if an individual performing service described in subparagraph (A) is reemployed or reinstated after being separated from such service for the purpose of accepting employment with the American Institute of Taiwan as provided under section 3310 of Title 22, then the service performed for that Institute shall be considered service described in subparagraph (A),

**(IV)** if an individual performing service described in subparagraph (A) returns to the performance of such service after performing service as a member of a uniformed service (including, for purposes of this clause, service in the National Guard and temporary service in the Coast Guard Reserve) and after exercising restoration or reemployment rights as provided under chapter 43 of Title 38, then the service so performed as a member of a uniformed service shall be considered service described in subparagraph (A), and

**(V)** if an individual performing service described in subparagraph (A) returns to the performance of such service after employment (by a tribal organization) to which section 5323(e)(2) of Title 25 applies, then the service performed for that tribal organization shall be considered service described in subparagraph (A); or

**(ii)** is receiving an annuity from the Civil Service Retirement and Disability Fund, or benefits (for service as an employee) under another retirement system established by a law of the United States for employees of the Federal Government (other than for members of the uniformed services);

except that this paragraph shall not apply with respect to any such service performed on or after any date on which such individual performs--

**(C)** service performed as the President or Vice President of the United States,

**(D)** service performed--

**(i)** in a position placed in the Executive Schedule under sections 5312 through 5317 of Title 5,

**(ii)** as a noncareer appointee in the Senior Executive Service or a noncareer member of the Senior Foreign Service, or

**(iii)** in a position to which the individual is appointed by the President (or his designee) or the Vice President under section 105(a)(1), 106(a)(1), or 107(a)(1) or (b)(1) of Title 3, if the maximum rate of basic pay for such position is at or above the rate for level V of the Executive Schedule,

**(E)** service performed as the Chief Justice of the United States, an Associate Justice of the Supreme Court, a judge of a United States court of appeals, a judge of a United States district court (including the district court of a territory), a judge of the United States Court of Federal Claims, a judge of the United States Court of International Trade, a judge of the United States Tax Court, a United States magistrate judge, or a referee in bankruptcy or United States bankruptcy judge,

**(F)** service performed as a Member, Delegate, or Resident Commissioner of or to the Congress,

**(G)** any other service in the legislative branch of the Federal Government if such service--

**(i)** is performed by an individual who was not subject to subchapter III of chapter 83 of Title 5 or to another retirement system established by a law of the United States for employees of the Federal Government (other than for members of the uniformed services), on December 31, 1983, or

**(ii)** is performed by an individual who has, at any time after December 31, 1983, received a lump-sum payment under section 8342(a) of Title 5 or under the corresponding provision of the law establishing the other retirement system described in clause (i), or

**(iii)** is performed by an individual after such individual has otherwise ceased to be subject to subchapter III of chapter 83 of Title 5 (without having an application pending for coverage under such subchapter), while performing service in the legislative branch (determined without regard to the provisions of subparagraph (B) relating to continuity of employment), for any period of time after December 31, 1983, and for purposes of this subparagraph (G) an individual is subject to such subchapter III or to any such other retirement system at any time only if (a) such individual's pay is subject to deductions, contributions, or similar payments (concurrent with the service being performed at that time) under section 8334(a) of such Title 5 or the corresponding provision of the law establishing such other system, or (in a case to which section 8332(k)(1) of such Title applies) such individual is making payments of amounts equivalent to such deductions, contributions, or similar payments while on leave without pay, or (b) such individual is receiving an annuity from the Civil Service Retirement and Disability Fund, or is receiving benefits (for service as an employee) under another retirement system established by a law of the United States for employees of the Federal Government (other than for members of the uniformed services), or

**(H)** service performed by an individual--

**(i)** on or after the effective date of an election by such individual, under section 301 of the Federal Employees' Retirement System Act of 1986, section 2157 of Title 50, or the Federal Employees' Retirement System Open Enrollment Act of 19971 to become subject to the Federal Employees' Retirement System provided in chapter 84 of Title 5, or

**(ii)** on or after the effective date of an election by such individual, under regulations issued under section 860 of the Foreign Service Act of 1980, to become subject to the Foreign Service Pension System provided in subchapter II of chapter 8 of title I of such Act;

**(6)** Service performed in the employ of the United States or any instrumentality of the United States if such service is performed--

**(A)** in a penal institution of the United States by an inmate thereof;

**(B)** by any individual as an employee included under section 5351(2) of Title 5 (relating to certain interns, student nurses, and other student employees of hospitals of the Federal Government), other than as a medical or dental intern or a medical or dental resident in training; or

**(C)** by any individual as an employee serving on a temporary basis in case of fire, storm, earthquake, flood, or other similar emergency;

**(7)** Service performed in the employ of a State, or any political subdivision thereof, or any instrumentality of any one or more of the foregoing which is wholly owned thereby, except that this paragraph shall not apply in the case of--

  **(A)** service included under an agreement under section 418 of this title,

  **(B)** service which, under subsection (k), constitutes covered transportation service,

  **(C)** service in the employ of the Government of Guam or the Government of American Samoa or any political subdivision thereof, or of any instrumentality of any one or more of the foregoing which is wholly owned thereby, performed by an officer or employee thereof (including a member of the legislature of any such Government or political subdivision), and, for purposes of this subchapter--

  **(i)** any person whose service as such an officer or employee is not covered by a retirement system established by a law of the United States shall not, with respect to such service, be regarded as an officer or employee of the United States or any agency or instrumentality thereof, and

  **(ii)** the remuneration for service described in clause (i) (including fees paid to a public official) shall be deemed to have been paid by the Government of Guam or the Government of American Samoa or by a political subdivision thereof or an instrumentality of any one or more of the foregoing which is wholly owned thereby, whichever is appropriate,

  **(D)** service performed in the employ of the District of Columbia or any instrumentality which is wholly owned thereby, if such service is not covered by a retirement system established by a law of the United States (other than the Federal Employees Retirement System provided in chapter 84 of Title 5); except that the provisions of this subparagraph shall not be applicable to service performed--

  **(i)** in a hospital or penal institution by a patient or inmate thereof;

  **(ii)** by any individual as an employee included under section 5351(2) of Title 5 (relating to certain interns, student nurses, and other student employees of hospitals of the District of Columbia Government), other than as a medical or dental intern or as a medical or dental resident in training;

  **(iii)** by any individual as an employee serving on a temporary basis in case of fire, storm, snow, earthquake, flood, or other similar emergency; or

  **(iv)** by a member of a board, committee, or council of the District of Columbia, paid on a per diem, meeting, or other fee basis,

  **(E)** service performed in the employ of the Government of Guam (or any instrumentality which is wholly owned by such Government) by an employee properly classified as a temporary or intermittent employee, if such service is not covered by a retirement system established by a law of Guam; except that (i) the provisions of this subparagraph shall not be applicable to services performed by an elected official or a member of the legislature or in a hospital or penal institution by a patient or inmate thereof, and (ii) for purposes of this subparagraph, clauses (i) and (ii) of subparagraph (C) shall apply, or

**(F)** service in the employ of a State (other than the District of Columbia, Guam, or American Samoa), of any political subdivision thereof, or of any instrumentality of any one or more of the foregoing which is wholly owned thereby, by an individual who is not a member of a retirement system of such State, political subdivision, or instrumentality, except that the provisions of this subparagraph shall not be applicable to service performed--

**(i)** by an individual who is employed to relieve such individual from unemployment;

**(ii)** in a hospital, home, or other institution by a patient or inmate thereof;

**(iii)** by any individual as an employee serving on a temporary basis in case of fire, storm, snow, earthquake, flood, or other similar emergency;

**(iv)** by an election official or election worker if the remuneration paid in a calendar year for such service is less than $1,000 with respect to service performed during any calendar year commencing on or after January 1, 1995, ending on or before December 31, 1999, and the adjusted amount determined under section 418(c)(8)(B) of this title for any calendar year commencing on or after January 1, 2000, with respect to service performed during such calendar year; or

**(v)** by an employee in a position compensated solely on a fee basis which is treated pursuant to section 411(c)(2)(E) of this title as a trade or business for purposes of inclusion of such fees in net earnings from self employment;

for purposes of this subparagraph, except as provided in regulations prescribed by the Secretary of the Treasury, the term "retirement system" has the meaning given such term by section 418(b)(4) of this title;

**(8)(A)** Service performed by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order, except that this subparagraph shall not apply to service performed by a member of such an order in the exercise of such duties, if an election of coverage under section 3121(r) of the Internal Revenue Code of 1986 is in effect with respect to such order, or with respect to the autonomous subdivision thereof to which such member belongs;

**(B)** Service performed in the employ of a church or qualified church-controlled organization if such church or organization has in effect an election under section 3121(w) of the Internal Revenue Code of 1986, other than service in an unrelated trade or business (within the meaning of section 513(a) of such Code);

**(9)** Service performed by an individual as an employee or employee representative as defined in section 3231 of the Internal Revenue Code of 1986;

**(10)** Service performed in the employ of--

**(A)** a school, college, or university, or

**(B)** an organization described in section 509(a)(3) of the Internal Revenue Code of 1986 if the organization is organized, and at all times thereafter is operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of a school, college, or university and is operated, supervised, or controlled by or in connection with such school, college, or university, unless it is a school, college, or university of a State or a political subdivision thereof and the services in its employ performed by a student referred to in section 418(c)(5) of this title are covered under the agreement between the Commissioner of Social Security and such State entered into pursuant to section 418 of this title;

if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university;

**(11)** Service performed in the employ of a foreign government (including service as a consular or other officer or employee or a nondiplomatic representative);

**(12)** Service performed in the employ of an instrumentality wholly owned by a foreign government--

**(A)** If the service is of a character similar to that performed in foreign countries by employees of the United States Government or of an instrumentality thereof; and

**(B)** If the Secretary of State shall certify to the Secretary of the Treasury that the foreign government, with respect to whose instrumentality and employees thereof exemption is claimed, grants an equivalent exemption with respect to similar service performed in the foreign country by employees of the United States Government and of instrumentalities thereof;

**(13)** Service performed as a student nurse in the employ of a hospital or a nurses' training school by an individual who is enrolled and is regularly attending classes in a nurses' training school chartered or approved pursuant to State law;

**(14)(A)** Service performed by an individual under the age of eighteen in the delivery or distribution of newspapers or shopping news, not including delivery or distribution to any point for subsequent delivery or distribution;

**(B)** Service performed by an individual in, and at the time of, the sale of newspapers or magazines to ultimate consumers, under an arrangement under which the newspapers or magazines are to be sold by him at a fixed price, his compensation being based on the retention of the excess of such price over the amount at which the newspapers or magazines are charged to him, whether or not he is guaranteed a minimum amount of compensation for such service, or is entitled to be credited with the unsold newspapers or magazines turned back;

**(15)** Service performed in the employ of an international organization entitled to enjoy privileges, exemptions, and immunities as an international organization under the International Organizations Immunities Act (59 Stat. 669), except service which constitutes "employment" under subsection (r);

**(16)** Service performed by an individual under an arrangement with the owner or tenant of land pursuant to which--
  **(A)** such individual undertakes to produce agricultural or horticultural commodities (including livestock, bees, poultry, and fur-bearing animals and wildlife) on such land,
  **(B)** the agricultural or horticultural commodities produced by such individual, or the proceeds therefrom, are to be divided between such individual and such owner or tenant, and
  **(C)** the amount of such individual's share depends on the amount of the agricultural or horticultural commodities produced;

**(17)** Repealed. Pub.L. 113-295, Div. A, Title II, § 221(a)(99)(C)(ii), Dec. 19, 2014, 128 Stat. 4052

**(18)** Service performed in Guam by a resident of the Republic of the Philippines while in Guam on a temporary basis as a nonimmigrant alien admitted to Guam pursuant to section 1101(a)(15)(H)(ii) of Title 8;

**(19)** Service which is performed by a nonresident alien individual for the period he is temporarily present in the United States as a nonimmigrant under subparagraph (F), (J), (M), or (Q) of section 1101(a)(15) of Title 8, and which is performed to carry out the purpose specified in subparagraph (F), (J), (M), or (Q) as the case may be;

**(20)** Service (other than service described in paragraph (3)(A)) performed by an individual on a boat engaged in catching fish or other forms of aquatic animal life under an arrangement with the owner or operator of such boat pursuant to which--
  **(A)** such individual does not receive any additional compensation other than as provided in subparagraph (B) and other than cash remuneration--
  **(i)** which does not exceed $100 per trip;
  **(ii)** which is contingent on a minimum catch; and
  **(iii)** which is paid solely for additional duties (such as mate, engineer, or cook) for which additional cash remuneration is traditional in the industry,
  **(B)** such individual receives a share of the boat's (or the boats' in the case of a fishing operation involving more than one boat) catch of fish or other forms of aquatic animal life or a share of the proceeds from the sale of such catch, and

   **(C)** the amount of such individual's share depends on the amount of the boat's (or boats' in the case of a fishing operation involving more than one boat) catch of fish or other forms of aquatic animal life,

   but only if the operating crew of such boat (or each boat from which the individual receives a share in the case of a fishing operation involving more than one boat) is normally made up of fewer than 10 individuals;

**(21)** Domestic service in a private home of the employer which--

   **(A)** is performed in any year by an individual under the age of 18 during any portion of such year; and

   **(B)** is not the principal occupation of such employee; or

**(22)** Service performed by members of Indian tribal councils as tribal council members in the employ of an Indian tribal government, except that this paragraph shall not apply in the case of service included under an agreement under section 418a of this title. For purposes of paragraph (20), the operating crew of a boat shall be treated as normally made up of fewer than 10 individuals if the average size of the operating crew on trips made during the preceding 4 calendar quarters consisted of fewer than 10 individuals….

**42 U.S.C. § 413. Quarter and quarter of coverage (excerpt)**

**(a)(2)(A)** The term "quarter of coverage" means--
**(i)** for calendar years before 1978, and subject to the provisions of subparagraph (B), a quarter in which an individual has been paid $50 or more in wages (except wages for agricultural labor paid after 1954) or for which he has been credited (as determined under section 412 of this title) with $100 or more of self-employment income; and
**(ii)** for calendar years after 1977, and subject to the provisions of subparagraph (B), each portion of the total of the wages paid and the self-employment income credited (pursuant to section 412 of this title) to an individual in a calendar year which equals the amount required for a quarter of coverage in that calendar year (as determined under subsection (d)), with such quarter of coverage being assigned to a specific calendar quarter in such calendar year only if necessary in the case of any individual who has attained age 62 or died or is under a disability and the requirements for insured status in subsection (a) or (b) of section 414 of this title, the requirements for entitlement to a computation or recomputation of his primary insurance amount, or the requirements of paragraph (3) of section 416(i) of this title would not otherwise be met….

**42 U.S.C. § 415. Computation of primary insurance amount (excerpt)**

**(a)(7)(A)** In the case of an individual whose primary insurance amount would be computed under paragraph (1) of this subsection, who--

**(i)** attains age 62 after 1985 (except where he or she became entitled to a disability insurance benefit before 1986 and remained so entitled in any of the 12 months immediately preceding his or her attainment of age 62), or

**(ii)** would attain age 62 after 1985 and becomes eligible for a disability insurance benefit after 1985, and who first becomes eligible after 1985 for a monthly periodic payment (including a payment determined under subparagraph (C), but excluding (I) a payment under the Railroad Retirement Act of 1974 or 1937, (II) a payment by a social security system of a foreign country based on an agreement concluded between the United States and such foreign country pursuant to section 433 of this title, and (III) a payment based wholly on service as a member of a uniformed service (as defined in section 410(m) of this title)) which is based in whole or in part upon his or her earnings for service which did not constitute "employment" as defined in section 410 of this title for purposes of this subchapter (hereafter in this paragraph and in subsection (d)(3) referred to as "noncovered service"), the primary insurance amount of that individual during his or her concurrent entitlement to such monthly periodic payment and to old-age or disability insurance benefits shall be computed or recomputed under subparagraph (B).

**(B)(i)** If paragraph (1) of this subsection would apply to such an individual (except for subparagraph (A) of this paragraph), there shall first be computed an amount equal to the individual's primary insurance amount under paragraph (1) of this subsection, except that for purposes of such computation the percentage of the individual's average indexed monthly earnings established by subparagraph (A)(i) of paragraph (1) shall be the percent specified in clause (ii). There shall then be computed (without regard to this paragraph) a second amount, which shall be equal to the individual's primary insurance amount under paragraph (1) of this subsection, except that such second amount shall be reduced by an amount equal to one-half of the portion of the monthly periodic payment which is attributable to noncovered service performed after 1956 (with such attribution being based on the proportionate number of years of such noncovered service) and to which the individual is entitled (or is deemed to be entitled) for the initial month of his or her concurrent entitlement to such monthly periodic payment and old-age or disability insurance benefits. The individual's primary insurance amount shall be the larger of the two amounts computed under this subparagraph (before the application of subsection (i)) and shall be deemed to be computed under paragraph (1) of this subsection for the purpose of applying other provisions of this subchapter.

**(ii)** For purposes of clause (i), the percent specified in this clause is--

**(I)** 80.0 percent with respect to individuals who become eligible (as defined in paragraph (3)(B)) for old-age insurance benefits (or became eligible as so defined for disability insurance benefits before attaining age 62) in 1986;

**(II)** 70.0 percent with respect to individuals who so become eligible in 1987;

**(III)** 60.0 percent with respect to individuals who so become eligible in 1988;

**(IV)** 50.0 percent with respect to individuals who so become eligible in 1989; and

**(V)** 40.0 percent with respect to individuals who so become eligible in 1990 or thereafter.

**(C)(i)** Any periodic payment which otherwise meets the requirements of subparagraph (A), but which is paid on other than a monthly basis, shall be allocated on a basis equivalent to a monthly payment (as determined by the Commissioner of Social Security), and such equivalent monthly payment shall constitute a monthly periodic payment for purposes of this paragraph.

**(ii)** In the case of an individual who has elected to receive a periodic payment that has been reduced so as to provide a survivor's benefit to any other individual, the payment shall be deemed to be increased (for purposes of any computation under this paragraph or subsection (d)(3)) by the amount of such reduction.

**(iii)** For purposes of this paragraph, the term "periodic payment" includes a payment payable in a lump sum if it is a commutation of, or a substitute for, periodic payments.

**(D)** This paragraph shall not apply in the case of an individual who has 30 years or more of coverage. In the case of an individual who has more than 20 years of coverage but less than 30 years of coverage (as so defined), the percent specified in the applicable subdivision of subparagraph (B)(ii) shall (if such percent is smaller than the applicable percent specified in the following table) be deemed to be the applicable percent specified in the following table:

| If the number of such individual's years of coverage (as so defined) is: | The applicable percent is: |
|---|---|
| 29 | 85 percent |
| 28 | 80 percent |
| 27 | 75 percent |
| 26 | 70 percent |

| | |
|---|---|
| 25 | 65 percent |
| 24 | 60 percent |
| 23 | 55 percent |
| 22 | 50 percent |
| 21 | 45 percent. |

For purposes of this subparagraph, the term "year of coverage" shall have the meaning provided in paragraph (1)(C)(ii), except that the reference to "15 percent" therein shall be deemed to be a reference to "25 percent".

**(E)** This paragraph shall not apply in the case of an individual whose eligibility for old-age or disability insurance benefits is based on an agreement concluded pursuant to section 433 of this title or an individual who on January 1, 1984--

**(i)** is an employee performing service to which social security coverage is extended on that date solely by reason of the amendments made by section 101 of the Social Security Amendments of 1983; or

**(ii)** is an employee of a nonprofit organization which (on December 31, 1983) did not have in effect a waiver certificate under section 3121(k) of the Internal Revenue Code of 1954 and to the employees of which social security coverage is extended on that date solely by reason of the amendments made by section 102 of that Act, unless social security coverage had previously extended to service performed by such individual as an employee of that organization under a waiver certificate which was subsequently (prior to December 31, 1983) terminated….

**42 U.S.C. § 415. Computation of primary insurance amount (excerpt)**

**(d)(3)** In the case of an individual whose primary insurance amount is not computed under paragraph (1) of subsection (a) by reason of paragraph (4)(B)(ii) of that subsection, who—

  **(A)** attains age 62 after 1985 (except where he or she became entitled to a disability insurance benefit before 1986, and remained so entitled in any of the 12 months immediately preceding his or her attainment of age 62), or

  **(B)** would attain age 62 after 1985 and becomes eligible for a disability insurance benefit after 1985, and who first becomes eligible after 1985 for a monthly periodic payment (including a payment determined under subsection (a)(7)(C), but excluding (I) a payment under the Railroad Retirement Act of 1974 or 1937, (II) a payment by a social security system of a foreign country based on an agreement concluded between the United States and such foreign country pursuant to section 433 of this title, and (III) a payment based wholly on service as a member of a uniformed service (as defined in section 410(m) of this title)) which is based (in whole or in part) upon his or her earnings in noncovered service, the primary insurance amount of such individual during his or her concurrent entitlement to such monthly periodic payment and to old-age or disability insurance benefits shall be the primary insurance amount computed or recomputed under this subsection (without regard to this paragraph and before the application of subsection (i)) reduced by an amount equal to the smaller of—

  **(i)** one-half of the primary insurance amount (computed without regard to this paragraph and before the application of subsection (i)), or

  **(ii)** one-half of the portion of the monthly periodic payment (or payment determined under subsection (a)(7)(C)) which is attributable to noncovered service performed after 1956 (with such attribution being based on the proportionate number of years of such noncovered service) and to which that individual is entitled (or is deemed to be entitled) for the initial month of such concurrent entitlement.

This paragraph shall not apply in the case of any individual to whom subsection (a)(7) would not apply by reason of subparagraph (E) or the first sentence of subparagraph (D) thereof....

**42 U.S.C. § 433. International agreements**

**(a) Purpose of agreement**

The President is authorized (subject to the succeeding provisions of this section) to enter into agreements establishing totalization arrangements between the social security system established by this subchapter and the social security system of any foreign country, for the purposes of establishing entitlement to and the amount of old-age, survivors, disability, or derivative benefits based on a combination of an individual's periods of coverage under the social security system established by this subchapter and the social security system of such foreign country.

**(b) Definitions**

For the purposes of this section--

**(1)** the term "social security system" means, with respect to a foreign country, a social insurance or pension system which is of general application in the country and under which periodic benefits, or the actuarial equivalent thereof, are paid on account of old age, death, or disability; and

**(2)** the term "period of coverage" means a period of payment of contributions or a period of earnings based on wages for employment or on self-employment income, or any similar period recognized as equivalent thereto under this subchapter or under the social security system of a country which is a party to an agreement entered into under this section.

**(c) Crediting periods of coverage; conditions of payment of benefits**

**(1)** Any agreement establishing a totalization arrangement pursuant to this section shall provide--

**(A)** that in the case of an individual who has at least 6 quarters of coverage as defined in section 413 of this title and periods of coverage under the social security system of a foreign country which is a party to such agreement, periods of coverage of such individual under such social security system of such foreign country may be combined with periods of coverage under this subchapter and otherwise considered for the purposes of establishing entitlement to and the amount of old-age, survivors, and disability insurance benefits under this subchapter;

**(B)** (i) that employment or self-employment, or any service which is recognized as equivalent to employment or self-employment under this subchapter or the social security system of a foreign country which is a party to such agreement, shall, on or after the effective date of such agreement, result in a period of coverage under the system established under this subchapter or under the system established under the laws of such foreign country, but not under both, and (ii) the methods and conditions for determining under which system employment, self-employment, or other service shall result in a period of coverage; and

**(C)** that where an individual's periods of coverage are combined, the benefit amount payable under this subchapter shall be based on the proportion of such individual's periods of coverage which was completed under this subchapter.

**(2)** Any such agreement may provide that an individual who is entitled to cash benefits under this subchapter shall, notwithstanding the provisions of section 402(t) of this title, receive such benefits while he resides in a foreign country which is a party to such agreement.

**(3)** Section 426 of this title shall not apply in the case of any individual to whom it would not be applicable but for this section or any agreement or regulation under this section.

**(4)** Any such agreement may contain other provisions which are not inconsistent with the other provisions of this subchapter and which the President deems appropriate to carry out the purposes of this section.

## (d) Regulations

The Commissioner of Social Security shall make rules and regulations and establish procedures which are reasonable and necessary to implement and administer any agreement which has been entered into in accordance with this section.

## (e) Reports to Congress; effective date of agreements

**(1)** Any agreement to establish a totalization arrangement entered into pursuant to this section shall be transmitted by the President to the Congress together with a report on the estimated number of individuals who will be affected by the agreement and the effect of the agreement on the estimated income and expenditures of the programs established by this chapter.

**(2)** Such an agreement shall become effective on any date, provided in the agreement, which occurs after the expiration of the period (following the date on which the agreement is transmitted in accordance with paragraph (1)) during which at least one House of the Congress has been in session on each of 60 days; except that such agreement shall not become effective if, during such period, either House of the Congress adopts a resolution of disapproval of the agreement.

**20 C.F.R. § 404.213(a). Computation where you are eligible for a pension based on your noncovered employment (excerpt)**

**(a)** When applicable. Except as provided in paragraph (d) of this section, we will modify the formula prescribed in § 404.212 and in appendix II of this subpart in the following situations:

    **(1)** You become eligible for old-age insurance benefits after 1985; or

    **(2)** You become eligible for disability insurance benefits after 1985; and

    **(3)** For the same months after 1985 that you are entitled to old-age or disability benefits, you are also entitled to a monthly pension(s) for which you first became eligible after 1985 based in whole or part on your earnings in employment which was not covered under Social Security. We consider you to first become eligible for a monthly pension in the first month for which you met all requirements for the pension except that you were working or had not yet applied. In determining whether you are eligible for a pension before 1986, we consider all applicable service used by the pension-paying agency. (Noncovered employment includes employment outside the United States which is not covered under the United States Social Security system. Pensions from noncovered employment outside the United States include both pensions from social insurance systems that base benefits on earnings but not on residence or citizenship, and those from private employers. However, for benefits payable for months prior to January 1995, we will not modify the computation of a totalization benefit (see §§ 404.1908 and 404.1918) as a result of your entitlement to another pension based on employment covered by a totalization agreement. Beginning January 1995, we will not modify the computation of a totalization benefit in any case (see § 404.213(e)(8))….

### GN 00307.290 Evidence of Foreign Pensions and the Windfall Elimination Provision (WEP)

#### A. Introduction

WEP is intended to eliminate windfall Social Security benefits for retired or disabled workers who also receive pensions based on work which was not covered under the U.S. Social Security system. RS 00605.360 contains a more detailed explanation of this provision.

For months **after** December 1994, this instruction applies only to those individuals eligible for both a regular title II (nontotalization) benefit and a foreign pension other than a foreign totalization benefit which is based on an agreement with the United States. For months **before** January 1995, this instruction applies to individuals eligible for a regular title II benefit and any foreign pension, including one based on a totalization agreement. GN 01701.300 shows how WEP affects workers entitled to totalization benefits.

#### B. Definition

A foreign pension is any periodic or lump-sum payment made by either a foreign employer or a foreign country.

#### C. Policy

#### 1. General

Generally, SSA assumes that work which was covered under a foreign social security system was not covered under U.S. Social Security.

#### 2. Foreign pensions

Generally, pensions based on noncovered work include social security or private pensions from foreign countries. Foreign payments may be only partially related to work (see GN 00307.290C.5.).

#### 3. Foreign pensions which trigger WEP

A foreign pension based on post-1956 work will trigger WEP if it is:

a private or governmental pension from a country which does not have a totalization agreement with the U.S., or

for months **after** December 1994, a private or governmental pension from a country which does have a totalization agreement with the U.S. — if the individual is receiving a nontotalized U.S. benefit and the foreign pension is not based on a totalization agreement with the United States (see GN 01701.305).

Only the part which is based on noncovered work after 1956 is used.

Add. 21

**4. Foreign pensions which do not trigger WEP**

Foreign pensions based solely on non-covered foreign employment before 1957 do not trigger WEP (e.g., Ghetto pension or ZRBG).

Foreign pensions earned by the following under dual coverage situations do not cause WEP to apply:

a. U.S. citizens and residents who worked in foreign countries and were subject to both U.S. and foreign social security coverage on the same earnings (e.g., a U.S. citizen working for a foreign affiliate under a 3121(l) agreement — see RS 01901.070);

b. Self-employed persons who were covered by both the U.S. and the foreign country on the same earnings.

**5. Payments which cannot be used to apply WEP guarantee provision**

Some foreign pensions are not based in whole or in part on work performed after 1956. Therefore, the following foreign pension payments cannot be used to apply the WEP guarantee provision:

a. Universal pension supplements payable to all aged individuals in a particular country, and not just to qualified workers.

b. That part of a pension based on **voluntary social security contributions** which some countries allow individuals to make in order to increase the amount of their pension.

   **EXAMPLE:** Individuals in the United Kingdom may continue to make (voluntary) social insurance contributions to that system during periods they are not working in covered employment or self-employment.

c. **Statutorily mandated minimum social insurance benefits;** i.e., that part of a social insurance benefit representing the difference between the amount of the benefit based on noncovered earnings and the actual amount paid after the benefit is raised to a statutory minimum.

   **EXAMPLE:** Italy pays a statutory minimum social insurance benefit, which is administratively increased if the benefit based on the individual's work history alone is not sufficient to meet the minimum required by law.

d. **Additional allowances allotted for dependents** which increase the pension amount to a given worker, and which are unrelated to actual work performed.

**EXAMPLE:** Both Ireland and Germany pay family allowance benefits for children, which are unrelated to the pensioner's work history.

e. **Pensions based only on residence or citizenship** in a particular country; i.e., the pension is not based on work.

**EXAMPLES:**

- Australia and New Zealand pay social (insurance) security benefits which are financed entirely from general revenue. There is no direct tax to either employees or employers to support the program. Both countries pay the benefits to all residents and may pay benefits abroad in certain situations.

- In Israel, the National Insurance Institute (NII) pays a flat-rate old-age pension to qualifying Israeli residents. The NII pension is payable whether a person worked or did not work.

- Since the basis for payment of the Australian, Israeli and New Zealand pensions are not derived from an individual's work-related earnings, these benefits do not cause the WEP to apply.

f. **That part of a foreign pension which is based on covered work** (e.g., part of the work on which the pension is based was for an employer which did not have a 3121(l) agreement for its employees, while part was for an employer which had such an agreement.)

**NOTE:**

The examples listed above are not all-inclusive. Other countries allow voluntary contributions, pay family allowance benefits, and so on.

## 6. Countries having "two-tiered" social security systems

Many countries have a "two-tiered" social security system; i.e., some benefits are directly related to the individual's work and earnings, while other benefits are residence-based. In other countries, payments made under the social security program appear to be earnings-based but in fact are not. It is therefore important to question the claimant/beneficiary closely during the claims interview (and to examine any evidence he/she may have) to determine whether the pension received may, in fact, be used to apply WEP. Generally, an award notice or letter issued by the paying agency in the foreign country will suffice.

**EXAMPLES:**

a. **Canada.** Payments made under the Old Age Security Program (OAS) are residence-based and may not be used to apply WEP. Payments made under the Canada Pension Plan (CPP) or the Quebec Pension Plan (QPP) are earnings-based and are subject to WEP offset.

b. **Sweden.** Benefits paid under Sweden's pension program include a flat-rate basic benefit based on residence, as well as a benefit paid under the earnings-related supplementary pension program (known as ATP).

c. **Norway.** The basic pension paid under the National Insurance Scheme (NIS) is based on residence in Norway, while the supplementary pension is earnings-related.

d. **Finland.** The National Pension Scheme (NPS) pays flat-rate benefits based on residence, while the Employment Pension Scheme (EPS) pays benefits based on a worker's earnings.

e. **Netherlands.** Residence-related payments are made under the National Insurance Scheme (NIS) and earnings- related payments under the supplementary Employed Persons Insurance Scheme (EPIS). In addition, certain individuals who have lost their jobs prior to having attained retirement age may qualify for a "pre-retirement" payment. This payment is actually a form of unemployment compensation and may not be used to apply WEP.

f. **Switzerland.** Ordinary pension benefits are based on a worker's contributions, while Switzerland also pays an "extraordinary" benefit which is needs-related, not based on contributions, and payable only to residents of Switzerland.

**NOTE:**

See GN 01701.320 for a list of totalization agreement countries and which types of pensions paid by those countries will cause WEP to apply and which will not.

## 7. Evidence

Photocopies of evidence used in connection with WEP must be certified photocopies (see GN 00301.095). Evidence of entitlement to a foreign pension will generally be a letter or award notice issued by the paying agency in the foreign country.

## 8. Reporting responsibility

It is the beneficiary's responsibility to notify SSA promptly when he becomes entitled to a pension based on noncovered work after 1956. This is explained in SSA Pub. No. 05-

10137 (Social Security - Your Payments While You Are Outside the United States), the foreign rights and responsibilities booklet.

### D. Procedure - developing amount of foreign pension

#### 1. Same earnings subject to both U.S and foreign social security coverage
Apply the same rules for verifying and determining the amount of a foreign pension as for pensions based on other noncovered work (see RS 00605.370 - RS 00605.374).

If a claimant alleges he also paid Social Security tax for a period of employment or self-employment shown on the SSA-308 (Modified Benefit Formula Questionnaire-Foreign Pension) as a period of noncovered work for which a foreign pension may be payable, verify this by checking the earnings record. If necessary, ask the claimant to contact the employer for the information.

#### 2. Part of work subject to U.S. social security coverage
Ask the claimant to get the needed information directly from the employer or agency involved if the information on the SSA-308 is not sufficient to determine which parts are based on covered and noncovered employment.

#### 3. Verifying foreign pension amount
Process the case as explained in RS 00605.370B. If the claimant has no (or an inadequate) reply to his requests to the foreign employer or agency, request the Office of International Operations (OIO) to assist in getting the necessary information (see GN 00904.220).

#### 4. Converting weekly amount to monthly amount
Be aware that sometimes certificates of entitlement to a foreign pension will indicate a weekly pension amount rather than a monthly amount. To convert a weekly pension to a monthly pension, multiply the weekly amount by 52 and divide by 12.

### E. Procedure - prorating a foreign pension
When it has been determined that a foreign pension is based in part on noncovered earnings and in part on a payment which may not be used to apply WEP (see GN 00307.290C.5.), prorate the foreign pension in order to obtain only that part based on noncovered earnings. Prorate the pension as follows:

- multiply the total pension amount (after converting it from a weekly amount to a monthly amount, if necessary) by the ratio of the number of months of noncovered work over the total number of months used in the computation; therefore

- multiply the pension amount by the total number of months of noncovered work after 1956, **and**

- divide this number by the total number of months used by the foreign country to compute the pension, based on both noncovered work **and** the pension payment which may not be used to apply WEP.

**EXAMPLE:** A worker is entitled to a German pension of 400 deutsch marks (DM) based on periods of employment and voluntary contributions in Germany from January 1951 through December 1970 (a total of 240 months). He made voluntary contributions to the German pension plan from January 1968 through December 1970 (a total of 36 months).

- Exclude months before 1957, since the WEP Guarantee applies only to noncovered earnings after 1956. This yields 168 months.

- Exclude the 36 months from 1968 through 1970 for which the worker made only voluntary contributions; i.e., he did not work in noncovered employment. This leaves 132 months during which the worker actually worked in noncovered employment after 1956.

- Multiply 400DM 132/240; i.e., 400DM 132 months = 52,800 divided by 240 months = 220DM. Therefore, for purposes of the WEP Guarantee provision (see GN 00307.290F.), the worker's foreign pension is 220DM.

Treat any month for which there are both noncovered earnings **and** one of the non-usable payments above (e.g., a month for which voluntary contributions were made) as a month of noncovered earnings.

### F. Procedure - applying the WEP Guarantee
If, based on the worker's allegations, use of the WEP Guarantee (see RS 00605.370) would result in a higher PIA in the example above, apply the WEP Guarantee as follows:

- Require verification of the pension amount from the paying agency/ employer. Make sure this includes the amount of the pension in the first month of concurrent entitlement to both the pension and the Social Security benefit, as well as the months of employment (after 1956) and the months of (for example) voluntary contributions on which the pension is based.

- If the claimant has the necessary documentation before adjudication, compute the PIA using the WEP Guarantee. If not, compute the PIA using the maximum reduction, and tell the claimant SSA will recompute the PIA using the WEP Guarantee when SSA receives the necessary verification of pension amounts from the agency/employer. Regardless of which action is taken, document the claims file.

Refer any questions on WEP and foreign pensions to the Office of International Programs at:

*Social Security Administration*
*Office of International Programs*
*3700 Operations Bldg*
*6401 Security Blvd.*
*Baltimore, MD 21235*

## G. Procedure - beneficiary reports

Apply WEP in accordance with GN 03001.020 if the beneficiary reports entitlement to a pension based on noncovered work. See GN 03001.005 if the report comes from a third party.

Do not apply WEP for months **after** December 1994, if the beneficiary receiving a regular U.S. Social Security benefit reports receipt of a totalization benefit based on an agreement with the United States. See GN 01701.310 and GN 01701.315 for how to exclude certain totalization benefits from WEP. See GN 01701.305 if the foreign totalization benefit is payable for months **before** January 1995.

**GN 01701.320 Types of Pensions in Totalization Agreement Countries That Will Not Trigger the Windfall Elimination Provision (WEP)**

**A. Introduction**

Some agreement countries pay pensions that are based entirely on nonwork-related factors such as residence. Other pensions paid by agreement countries may be based entirely on work or on a combination of work and nonwork factors (e.g., work and voluntary contributions) .

**B. Policy**

Foreign pensions that are based entirely on nonwork factors do not cause the WEP to apply in the computation of a regular (non-Totalization) primary insurance amount (PIA). Foreign pensions that are based on work or a combination of work and nonwork factors may cause the WEP to apply. However, when a foreign pension is based on a combination of work and nonwork factors, only that portion of the foreign pension attributable to work will be considered for purposes of applying the guarantee provision of the WEP.

**C. Kinds of pensions from agreement countries**

The following chart shows the types of benefits paid by agreement countries that will not cause the WEP to apply. Generally, the types of pensions are based on residence. If a type of benefit paid by an agreement country is not listed, assume that it may cause the WEP to apply.

| COUNTRY | TYPE OF BENEFIT |
| --- | --- |
| Australia | Social Security |
| Canada | Old-Age Security (OAS) |
| Denmark | Folkepension (FP) |
| Finland | National Pension Scheme (NPS) |
| Netherlands | National Insurance Scheme (AOW) |
| Norway | Basic Pension Program |
| Sweden | Basic Pension Program |

# AGREEMENT BETWEEN
# THE GOVERNMENT OF THE UNITED STATES OF AMERICA
# AND
# THE GOVERNMENT OF CANADA
# WITH RESPECT TO SOCIAL SECURITY

The Government of the United States of America and the Government of Canada,

Resolved to co-operate in the field of social security,

Have decided to conclude an agreement for this purpose, and,

Have agreed as follows:

PART I
*GENERAL PROVISIONS*
**ARTICLE I**

For the purpose of this Agreement:

1. "Territory" means,

as regards the United States, the States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa and the Northern Mariana Islands, and

as regards Canada, the territory of Canada;

2. "National" means,

as regards the United States, a national of the United States as defined in Section 101, Immigration and Nationality Act of 1952, as amended, and as regards Canada, a citizen of Canada;

3. "Laws" means,

the laws and regulations specified in Article II;

4. "Competent Authority" means,

as regards the United States, the Commissioner of Social Security, and as regards Canada, the Minister or Ministers of the Crown responsible for the administration of the laws specified in Article II(1)(b);

Add. 29

5. "Agency" means,

as regards the United States, the Social Security Administration, and

as regards Canada, for all matters other than those related to contributions: the Department of Employment and Immigration (designated by Human Resources Development); for matters related to contributions: the Department of National Revenue;

6. "Period of coverage" means,

a period of payment of contributions or a period of earnings from employment or self-employment, as defined or recognized as a period of coverage by the laws under which such period has been completed, or any similar period insofar as it is recognized by such laws as equivalent to a period of coverage; a period of residence shall not be recognized as a period of coverage;

7. "Benefit" means,

any benefit provided for in the laws of either Contracting State;

8. "Stateless person" means,

a person defined as a stateless person in Article 1 of the Convention Relating to the Status of Stateless Persons dated September 28, 1954;

9. "Refugee" means,

   a person defined as a refugee in Article 1 of the Convention Relating to the Status of Refugees dated July 28, 1951, and the Protocol to that Convention dated January 31, 1967;

10. "Government of Canada" means the Government in its capacity as representative of Her Majesty the Queen in right of Canada;

11. Any term not defined in this Article has the meaning assigned to it in the applicable laws.

## ARTICLE II

1. For the purpose of this Agreement, the applicable laws are:

   a. As regards the United States, the laws governing the Federal Old-Age, Survivors and Disability Insurance Program:

         i.    Title II of the Social Security Act and regulations pertaining thereto, except sections 226, 226A and 228 of that title and regulations pertaining to those sections, and

Chapter 2 and Chapter 21 of the Internal Revenue Code of 1986 and regulations pertaining to those chapters;

    b.  As regards Canada:

         i.    the Old Age Security Act and regulations made thereunder, and

        ii.    the Canada Pension Plan and regulations made thereunder.

2. Unless otherwise provided in this Agreement, the applicable laws referred to in paragraph (1) of this Article do not include treaties or other agreements concluded between either Contracting State and a third State and laws or regulations promulgated for their implementation.

3. Subject to paragraph (4), this Agreement shall also apply to laws which amend, supplement, consolidate or supersede the laws specified in paragraph (1).

4. This Agreement shall apply to laws which extend the laws of a Contracting State to new categories of beneficiaries unless an objection on the part of that Contracting State has been communicated to the other Contracting State not later than three months following the entry into force of such laws.

5. Provincial social security legislation may be dealt with in understandings as specified in Article XX.

## ARTICLE III

Unless otherwise provided, this Agreement shall apply to:

a. nationals of either Contracting State,

b. refugees,

c. stateless persons,

d. other persons with respect to the rights they derive from a national of either Contracting State, a refugee or a stateless person, and

e. nationals of a State other than a Contracting State who are not included among the persons referred to in paragraph (d) of this Article.

## ARTICLE IV

1. Unless otherwise provided in this Agreement, the persons designated in Article III (a), (b), (c) or (d) who reside in the territory of either Contracting State shall, in the application of the laws of a Contracting State, receive equal treatment, with respect to the payment of benefits, with the nationals of that Contracting State.

2. Nationals of a Contracting State who reside outside the territories of both Contracting States shall receive benefits provided by the laws of the other Contracting State under the same conditions which the other Contracting State applies to its own nationals who reside outside the territories of both Contracting States.

3. Unless otherwise provided in this Agreement, the laws of a Contracting State under which entitlement to or payment of cash benefits is dependent on residence or presence in the territory of that Contracting State shall not be applicable to the persons designated in Article III who reside in the territory of the other Contracting State.

4. As regards the laws of Canada, paragraph (1) of this Article is extended to persons designated in Article III(e).

PART II
*PROVISIONS ON COVERAGE*
## ARTICLE V

1. Except as otherwise provided in this Article, an employed person who works in the territory of one of the Contracting States shall, in respect of that work, be subject to the laws of only that Contracting State.

2. a. Where a person who is normally employed in the territory of one Contracting State and who is covered under its laws in respect of work performed for an employer having a place of business in that territory is sent by that employer to work for the same employer in the territory of the other Contracting State, the person shall be subject to the laws of only the first Contracting State in respect

of that work, as if it were performed in the territory of the first Contracting State. The preceding sentence shall apply provided that the period of work in the territory of the other Contracting State is not expected to exceed 60 months. For purposes of applying this sub-paragraph, an employer and an affiliated company of that employer (as defined under the laws of the Contracting State from which the person was sent) shall be considered one and the same, provided that the employment in the other Contracting State would have been subject to the laws on compulsory coverage of the Contracting State from which the person was sent in the absence of this Agreement.

b. For the purpose of subparagraph (a), where a person is required to work in the territory of the other Contracting State for intermittent periods of short duration, each such period shall be considered a separate period of work.

c. With the prior mutual consent of the Competent Authorities of the Contracting States, subparagraph (a) shall also apply:

    i.    where the employer does not have a place of business in the territory of the first Contracting State, or

    ii.   where the period of work in the other Contracting State exceeds or is expected to exceed 60 months.

3. This Article shall not apply to the categories of persons mentioned in the provisions of the Vienna Convention on Diplomatic Relations of April 18, 1961, and of the Vienna Convention on Consular Relations of April 24, 1963, unless such persons have waived their immunities and privileges with respect to the payment of social security contributions.

4. a. Except as provided in subparagraph (b), this Article shall not apply to a person employed in the Government service of one of the Contracting States.

b. Where a person employed in the Government service of one of the Contracting States is covered under the laws of both Contracting States in respect of that employment, the following rules shall apply:

    i.    a person in the Government service of one Contracting State who is sent to work within the territory of the other Contracting State shall be subject to the laws of only the first Contracting State in respect of that service;

    ii.    a person hired locally to work in the Government service of one Contracting State within the territory of the other Contracting State shall be subject to the laws of only the other Contracting State in respect of that service.

c. For the purpose of this paragraph, "Government service" means,

    iii.    as regards the United States, service in the employ of the Government of the United States or any instrumentality thereof;

    iv.    as regards Canada, service in the employ of the Government of Canada or a Province of Canada or a Canadian municipality.

5. Where, but for this Article, a person would be covered under United States laws as well as under the Canada Pension Plan in respect of employment as an officer or member of the crew on a ship or aircraft, that person shall, in respect of that employment, be subject only to the Canada Pension Plan if that person is a resident of Canada, and only to United States laws in any other case.

6. Where, but for this Article, a person would be covered under the laws of both Contracting States in respect of earnings from self-employment, that person shall, in respect thereof, be subject only to the laws of Canada if that person is considered to be resident in Canada for the purposes of the relevant provisions of those laws, and only to United States laws in any other case.

7. Where, but for this Article, a person would be covered under the laws of both Contracting States in respect of an activity that is considered to be self-employment by one of the Contracting States and employment by the other Contracting State, that activity shall be treated according to the provisions of this Article respecting self-employment if the person is a resident of the first Contracting State and according to the provisions of this Article respecting employment in any other case.

8. Where, by virtue of this Article, a person would be subject to the laws of Canada but coverage is not effected under those laws, the person shall be subject to United States laws.

9. [Deleted effective October 1, 1997]

10. Where a person covered under the laws of a Contracting State in accordance with this Agreement is also covered under the laws of the other Contracting State or a third State in accordance with the provisions of an agreement between a Contracting State and a third State, the Competent Authorities of the two Contracting States may agree to exclude the person from the application of this Agreement.

11. The Competent Authorities of the two Contracting States may, by common agreement, make exceptions in the application of this Article in respect of any person or category of persons.

12. The application of this Article shall be subject to such rules as the Competent Authorities of the two Contracting States may prescribe through arrangements made pursuant to Article XII (a) of this Agreement.

## ARTICLE VI

1. Except as otherwise provided in this Article, where a person referred to in Article V(2) is subject to the laws of Canada, or the comprehensive pension plan of a province, during any period of residence in the territory of the United States, that period of residence, in respect of that person, his spouse and dependants who reside with him and who are not employed or self-employed during that period, shall be treated as a period of residence in Canada for the purposes of the Old Age Security Act.

2. Any calendar quarter during which a spouse or a dependant of a person referred to in Article V(2) is credited with a period of coverage under United States laws shall not be counted as residence in Canada for the purposes of the Old Age Security Act.

3. Except as otherwise provided in this Article, where a person referred to in Article V(2) is subject to United States laws during any period of residence in the territory of Canada, that period, in respect of that person, his spouse and dependants who reside with him and who are not employed or self-employed during that period, shall not be treated as residence in Canada for the purposes of the Old Age Security Act.

4. Except as otherwise provided in this Article, periods during which the spouse or dependant referred to in paragraph (3) of this Article is contributing to the Canada Pension Plan or the comprehensive pension plan of a province as a result of employment or self-employment shall be treated as periods of residence in Canada for the purposes of the Old Age Security Act.

5. Except as otherwise provided in this Article, any person who resides in the United States, is employed in Canada and is subject to the Canada Pension Plan or the comprehensive pension plan of a province shall be credited with one year of residence under the Old Age Security Act for each year of contributions under the Canada Pension Plan or the comprehensive pension plan of a province.

6. If a person referred to in paragraph (4) or (5) of this Article performs services which are covered as employment or self-employment under United States laws and simultaneously performs other services which are covered as employment or self-employment under the Canada Pension Plan or a comprehensive pension plan of a province, that period of employment or self-employment shall not be treated as a period of residence for the purposes of the Old Age Security Act.

PART III
*PROVISIONS ON BENEFITS*

Chapter 1
**PROVISIONS APPLICABLE TO THE UNITED STATES**
**ARTICLE VII**

1. Where a person has completed at least six quarters of coverage under United States laws, but does not have sufficient quarters of coverage to satisfy the requirements for entitlement to benefits under United States laws, periods of coverage completed under the Canada Pension Plan shall be taken into account to the extent they do not coincide with calendar quarters already credited as quarters of coverage under United States laws.

2. In determining eligibility for benefits under paragraph (1) of this Article, the agency of the United States shall credit four quarters of coverage for every year of contributions under the Canada Pension Plan certified as creditable by the agency of Canada; however, no quarter of coverage shall be credited for any calendar quarter already credited as a quarter of coverage under United States laws. The total number of quarters of coverage to be credited for a year shall not exceed four.

3. Where entitlement to a benefit under United States laws is established according to the provisions of paragraph (1) of this Article, the agency of the United States shall compute a pro rata primary insurance amount in accordance with United States laws based on the duration of the person's periods of coverage credited under United States laws. Benefits payable under United States laws shall be based on the pro rata primary insurance amount.

Add. 36

4. Entitlement to a benefit from the United States which results from paragraph (1) of this Article shall terminate with the acquisition of sufficient periods of coverage under United States laws to establish entitlement to an equal or higher benefit without the need to invoke the provisions of paragraph (1) of this Article.

Chapter 2
***PROVISIONS APPLICABLE TO CANADA***
**ARTICLE VIII**

1. (a) If a person is not entitled to the payment of a benefit because he or she has not accumulated sufficient periods of residence under the Old Age Security Act, or periods of coverage under the Canada Pension Plan, the entitlement of that person to the payment of that benefit shall, subject to sub-paragraph (1)(b), be determined by totalizing these periods and those specified in paragraph (2), provided that the periods do not overlap.

   (b) In the application of sub-paragraph (1)(a) of this Article to the Old Age Security Act:

   i.   only periods of residence in Canada completed on or after January 1, 1952, including periods deemed as such under Article VI of this Agreement, shall be taken into account; and

   ii.  if the total duration of those periods of residence is less than one year and if, taking into account only those periods, no right to a benefit exists under that Act, the agency of Canada shall not be required to pay a benefit in respect of those periods by virtue of this Agreement.

2. (a) For purposes of determining entitlement to the payment of a benefit under the Old Age Security Act, a quarter of coverage credited under United States laws on or after January 1, 1952 and after the age at which periods of residence in Canada are credited for purposes of that Act shall be considered as three months of residence in the territory of Canada.

   (b) For purposes of determining entitlement to the payment of a benefit under the Canada Pension Plan, a calendar year including at least one quarter of coverage credited under United States laws shall be considered as a year of coverage credited under the Canada Pension Plan.

3. [Deleted effective October 1, 1997]

Add. 37

4. [Deleted effective October 1, 1997]

## ARTICLE IX

1. If a person is entitled to the payment of an Old Age Security pension or a spouse's allowance solely through the application of the totalizing provisions of Article VIII, the agency of Canada shall calculate the amount of the pension or spouse's allowance payable to that person in conformity with the provisions of the Old Age Security Act governing the payment of a partial pension or a spouse's allowance, exclusively on the basis of the periods of residence in Canada on or after January 1, 1952 which may be considered under that Act or are deemed as such under Article VI of this Agreement.

2. Paragraph (1) shall also apply to a person outside Canada who would be entitled to the payment of a full pension in Canada but who has not resided in Canada for the minimum period required by the Old Age Security Act for entitlement to the payment of a pension outside Canada.

3. Notwithstanding any other provision of this Agreement:

   a. an Old Age Security pension shall be paid to a person who is outside Canada only if that person's periods of residence, totalized as provided in Article VIII, are at least equal to the minimum period of residence in Canada required by the Old Age Security Act for entitlement to the payment of a pension outside Canada; and

   b. a spouse's allowance and a guaranteed income supplement shall be paid to a person who is outside of Canada only to the extent permitted by the Old Age Security Act.

## ARTICLE X

If a person is entitled to the payment of a benefit under the Canada Pension Plan solely through the application of the totalizing provisions of Article VIII, the agency of Canada shall calculate the amount of benefit payable to that person in the following manner:

   a. the earnings-related portion of the benefit shall be determined in conformity with the provisions of the Canada Pension Plan, exclusively on the basis of the pensionable earnings under that Plan; and

Add. 38

b. the flat-rate portion of the benefit shall be determined by multiplying:

    i. the amount of the flat-rate portion of the benefit determined in conformity with the provisions of the Canada Pension Plan by

    ii. the fraction which represents the ratio of the periods of coverage under the Canada Pension Plan in relation to the minimum qualifying period required under that Plan to establish entitlement to that benefit, but in no case shall that fraction exceed the value of one.

## ARTICLE XI

[Deleted effective October 1, 1997]

PART IV
*MISCELLANEOUS PROVISIONS*
## ARTICLE XII

The Competent Authorities of the two Contracting States shall:

a. Conclude an Administrative Arrangement and make such other arrangements as may be necessary for the application of this Agreement;

b. To the extent permitted by the laws which they administer, and any other relevant national statutes, communicate to each other any information necessary for the application of this Agreement; and

c. Communicate to each other information concerning the measures taken for the application of this Agreement; and

d. Communicate to each other, as soon as possible, information concerning all changes in their respective laws which may affect the application of this Agreement.

## ARTICLE XIII

The Competent Authorities and agencies of the Contracting States, within the scope of their respective authorities, shall assist each other in implementing this Agreement. In accordance with arrangements to be agreed upon pursuant to Article XII(a), the Competent Authorities and agencies may also assist each other in administering the laws to which this Agreement applies.

## ARTICLE XIV

1. Where the laws of a Contracting State provide that any document which is submitted to the Competent Authority or an agency of that Contracting State shall be exempted, wholly or partly, from fees or charges, including consular and administrative fees, the exemption shall also apply to documents which are submitted to the Competent Authority or an agency of the other Contracting State in accordance with its laws.

2. Copies of documents which are certified as true and exact copies by the agency of one Contracting State shall be accepted as true and exact copies by the agency of the other Contracting State, without further certification. The agency of each Contracting State shall be the final judge of the probative value of the evidence submitted to it from whatever source.

## ARTICLE XV

1. The Competent Authorities and agencies of the Contracting States may correspond directly with each other and with any person wherever the person may reside whenever it is necessary for the administration of this Agreement. The correspondence may be in the official language of either Contracting State.

2. No application or document may be rejected by a Competent Authority or an agency solely on the grounds that it is written in an official language of the other Contracting State.

## ARTICLE XVI

1. A written application for benefits filed with an agency of one Contracting State shall protect the rights of the claimants under the laws of the other Contracting State if the applicant:

   a. requests that it be considered an application under the laws of the other Contracting State; or

   b. in the absence of a request that it not be so considered, provides information at the time of application indicating that the person on whose record benefits are claimed has completed periods of coverage under the laws of the other Contracting State.

2. An application for benefits under the laws of one Contracting State which is filed with the agency of the other Contracting State in accordance with paragraph (1) of this Article, shall be adjudicated by the agency of the first Contracting State under the applicable provisions of its laws.

3. An applicant may request that an application filed with an agency of one Contracting State be effective on a different date in the other Contracting State within the limitations of and in conformity with the laws of the other Contracting State.

4. The provisions of Part III of this Agreement shall apply only to an application for benefits which is filed on or after the date this Agreement enters into force.

## ARTICLE XVII

1. A written appeal of a determination made by the agency of one Contracting State may be validly filed with an agency of either Contracting State. The appeal shall be dealt with according to the appeal procedure of the laws of the Contracting State whose decision is being appealed.

2. Any claim, notice or written appeal which, under the laws of one Contracting State, must have been filed within a prescribed period with the agency of that Contracting State, but which is instead filed within the same prescribed period with the agency of the other Contracting State, shall be considered to be filed on time and shall be forthwith transmitted to the agency of the first Contracting State.

## ARTICLE XVIII

Unless disclosure is required under the national statutes of a Contracting State, information about an individual which is transmitted in accordance with the Agreement to that Contracting State by the other Contracting State is confidential and shall be used exclusively for the purposes of implementing this Agreement. Such information received by a Contracting State shall be governed by the national statutes of that Contracting State for the protection of privacy and confidentiality of personal data.

PART V
*TRANSITIONAL AND FINAL PROVISIONS*
**ARTICLE XIX**

1.  No provision of this Agreement shall confer any right

    a.  to receive a pension, allowance or benefit for a period before the date of the entry into force of the Agreement, or

    b.  to receive a lump-sum death benefit if the person died before the entry into force of the Agreement.

2.  In the implementation of this Agreement, consideration shall also be given to periods of coverage and other events relevant to rights under the laws occurring before the entry into force of this Agreement, except that neither Contracting State shall take into account periods of coverage occurring prior to the effective date of its laws.

3.  Determinations made before the entry into force of this Agreement shall not affect rights arising under it.

4.  This Agreement shall not result in the reduction of benefit amounts because of its entry into force.

5.  The period of work referred to in the last sentence of Article V(2)(a) shall be measured beginning on or after the date on which this Agreement enters into force.

## ARTICLE XX

The Competent Authority of the United States and the authorities of the provinces of Canada may conclude understandings concerning any social security legislation within the provincial jurisdiction insofar as those understandings are not inconsistent with the provisions of this Agreement.

## ARTICLE XXI

1.  This Agreement shall remain in force and effect until the expiration of one calendar year following the year in which written notice of its denunciation is given by one of the Contracting States to the other Contracting State.

2.  If this Agreement is terminated by denunciation, rights regarding entitlement to or payment of benefits acquired under it shall be retained; the Contracting States shall make arrangements dealing with rights in the process of being acquired.

## ARTICLE XXII

This Agreement shall enter into force on the first day of the second month following the month in which each Government shall have received from the other Government written notification that it has complied with all statutory and constitutional requirements for the entry into force of this Agreement.

IN WITNESS WHEREOF, the undersigned, duly authorized thereto by their respective Governments, have signed this Agreement.

DONE in duplicate at Ottawa this 11th day of March 1981, in the English and French languages, each version being equally authentic.

Alexander M. Haig, Jr.
For the Government of the
United States of America

Mark MacGuigan
Monique Begin
For the Government of Canada


## ADMINISTRATIVE ARRANGEMENT
## FOR THE IMPLEMENTATION OF THE AGREEMENT ON SOCIAL SECURITY
## BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA
## AND THE GOVERNMENT OF CANADA,
## CONCLUDED ON MARCH 11, 1981

In conformity with Article XII(a) of the Agreement on Social Security between the Government of the United States of America and the Government of Canada, entered into on March 11, 1981, and hereinafter referred to as "the Agreement",

The competent authorities:

-for the United States of America:

Richard A. SCHWEIKER
Secretary of Health and Human Services

-for Canada:

Madame Monique BEGIN
Minister of National Health and Welfare

Have agreed on the following provisions:

Chapter 1
*General Provisions*
**Paragraph 1**

The following are designated as liaison agencies for the purposes of administering the Agreement and this Administrative Arrangement:

For the United States, the Social Security Administration, and

For Canada, Income Security Programs, Department of National Health and Welfare.

**Paragraph 2**

Terms used in this Administrative Arrangement have the same meaning as in the Agreement.

**Paragraph 3**

The agencies of the Contracting States will agree upon joint procedures and forms necessary for the implementation of the Agreement and this Administrative Arrangement.

Chapter 2
*Provisions on Coverage*
**Paragraph 4**

1.  Where the laws of a Contracting State are applicable in accordance with Article V of the Agreement, the agency of that Contracting State will issue, in accordance with rules and procedures to be agreed upon by the agencies of the two Contracting States and at the request of an employer, employee or self-employed person, a certificate stating that the concerned employee or group of employees or self-employed person is covered by those laws. The certificate will be evidence that the employee, group of employees or self-employed person is exempt from the laws on compulsory coverage of the other Contracting State.

Add. 44

2. The certificate referred to in subparagraph 4.1 will be issued

   - In the United States:

By the Social Security Administration; and

- In Canada:

By the Accounting and Collections Division, Department of National Revenue-Taxation.

Chapter 3
*Provisions on Benefits*
**Paragraph 5**

1. The liaison agency of the Contracting State with which an application for benefits is first filed in accordance with Article XVI of the Agreement will inform the liaison agency of the other Contracting State of this fact without delay, using forms established for this purpose. It will also transmit documents and such other available information as may be necessary for the liaison agency of the other Contracting State to establish the right of the applicant to benefits according to the provisions of Part III of the Agreement. In the case of an application for disability benefits, it will, in particular, transmit relevant medical evidence in its possession concerning the disability of the applicant.

2. The liaison agency of a Contracting State which receives an application filed with the liaison agency of the other Contracting State will, without delay, provide the liaison agency of the other Contracting State with such evidence and other available information as may be required to complete action on the claim.

3. The liaison agency of the Contracting State with which an application for benefits has been filed will verify the accuracy of the information pertaining to the applicant and his family members. The types of information to be verified will be agreed upon by the liaison agencies.

**Paragraph 6**

In the application of Article VII of the Agreement, the Canadian liaison agency will notify the United States liaison agency of the years in which a person is credited with coverage under the Canada Pension Plan along with such other information as may be necessary to determine the amount of the person's benefit.

2. [Deleted effective August 1, 1984.]

Add. 45

3.  [Deleted effective August 1, 1984.]

## Paragraph 7

In the application of Chapter 2 of Part III of the Agreement, the United States liaison agency will notify the Canadian liaison agency of the periods of coverage which a person has completed under United States laws, along with such other information as may be necessary to determine the amount of the person's benefits.

Chapter 4

*Miscellaneous Provisions*
## Paragraph 8

In accordance with measures to be agreed upon pursuant to Paragraph 3 of this Administrative Arrangement, the liaison agency of one Contracting State will, upon request of the liaison agency of the other Contracting State, furnish available information relating to the claim of any specified individual for the purpose of administering the Agreement.

## Paragraph 9

The liaison agencies of the two Contracting States will exchange statistics on the payments made to beneficiaries under the Agreement for each calendar year in a form to be agreed upon. The data will include the number of beneficiaries and the total amount of benefits, by type of benefit.

## Paragraph 10

This Administrative Arrangement will take effect on the date of entry into force of the Agreement and will have the same period of duration.

DONE in duplicate at Washington, this 22nd day of May, 1981, in English and French, both texts being equally authentic.

FOR THE GOVERNMENT OF THE UNITED STATES OF AMERICA:

Richard S. Schweiker

FOR THE GOVERNMENT OF CANADA:

Monique Begin